H. Robert HOLMES, as Trustee for the Holmes Family Trust, On Behalf of Himself and All Others Similarly Situated, Plaintiff,

v.

Dale S. BAKER, Garlan Braithwaite, Harold M. Woody, Joseph E. Civiletto, George F. Baker III, Jeffrey N. Greenblatt, AVS Company, and Arthur Andersen LLP, Defendant.

No. 99–2560CIV.

United States District Court, S.D. Florida.

Aug. 23, 2001.

Kenneth J. Vianale, Milberg, Weiss, Bershad Hynes & Lerach LLP, Robert N. Kaplan, Laurence D. King, Christine M. Fox, Kaplan, Kilsheimer & Fox LLP, New York City, Myron M. Cherry, Matthew D. Tanner, Cherry & Lehman, Chicago, IL, for Plaintiffs.

Stanley H. Wakshlag, Michael C. Marsh, Brian P. Miller, Ackerman, Senterfitt & Eidson, P.A., Miami, FL, for Aviation Sales Company.

Jeffrey B. Crockett, Sean Santini, Aragon, Burlington, Weil & Crockett, P.A., Miami, FL, for Dale S. Baker and Harold S. Woody.

Lewis F. Murphy, Wendy Leavitt, Steel Hector & Davis, Miami, FL, for Garlan Braithwaite.

R. Lawrence Bonner, Justin Fineberg, Homer, Bonner & Delgado, P.A., Miami, FL, for Joseph E. Civiletto.

Scott B. Schreiber, Andrew Karron, John Freedman, Arnold & Porter, Washington, DC, Lance A. Harke, Sarah Clasby, Harke & Clasby, Miami, FL, for Arthur Andersen LLP.

Hilarie Bass, David Coulson, Greenberg Traurig, Miami, FL, for George Baker and Jeffrey Greenblatt.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant AVS Company's Motion to Dismiss Second Amended Class Action Complaint (**D.E. No. 90**), Defendant Garlan Braithwaite's Motion to Dismiss Second Amended Class Action Complaint (**D.E. No. 93**), Defendant Arthur Andersen LLP's Renewed Motion to Dismiss Second Amended Class Action Complaint (**D.E. No. 94**), Defendants Dale S. Baker and Harold M. Woody's Motion to Dismiss Second Amended Class Action Complaint (**D.E. No. 98**), all filed on *December 19, 2000,* Defendant Joseph E. Civiletto's Motion to Dismiss Second Amended Class Action Complaint (**D.E. No. 102**), filed on *December 20, 2000,* and Defendants George F. Baker III and Jeffrey N. Greenblatt's Motion to Dismiss Second Amended Class Action Complaint (**D.E. No. 122**), filed on *March 2, 2001.*

THE COURT has considered the motions, responses, oral argument, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the motions are DENIED as to Plaintiff's Sections 11 and 15 of the Securities Act claims, GRANTED with prejudice against Defendant Arthur Andersen LLP as to Plaintiff's Section 10(b) and Rule 10b–5 claim, and GRANTED without prejudice with leave to amend by no later than *September 14, 2001* as to Plaintiff's Section 10(b) and Rule 10b–5 and Section 20(a) of the Exchange Act claims against all other named defendants.

### LEGAL STANDARD

A court will not grant a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Id.* at 47, 78 S.Ct. 99. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *St. Joseph's Hospital, Inc. v. Hospital Corp. of America,* 795 F.2d 948 (11th Cir.1986). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his theories, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986).

### BACKGROUND

This is a putative securities class action levied against Defendant AVS Company

("AVS"), many of its executives and directors, and its outside auditor Arthur Anderson LLP ("AA"). Plaintiff alleges causes of action under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and Section 10(b) and Rule 10b–5 promulgated thereunder and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). The crux of Plaintiff's allegations is that the financial results for 1997, 1998, and the first three quarters of 1999 were materially overstated in violation of Generally Accepted Accounting Principles ("GAAP").

## A. The Defendants

The named defendants include AVS, which is a leading independent provider of fully integrated aviation inventory and maintenance services, including aircraft heavy maintenance, component repair overhaul, leasing, the distribution of aircraft small parts and the manufacturer of new components for major commercial airlines, original equipment manufacturers and maintenance and repair facilities throughout the world.

Defendant Dale S. Baker ("Dale Baker") was at all relevant times the President and Chief Executive Officer of AVS and Chairman of AVS' Board of Directors. Dale Baker also was a member of the Executive Committee of the Board of Directors. Dale Baker signed AVS' June 10, 1999 Registration Statement and Prospectus ("Prospectus"), which allegedly included false financial results for the year ended December 31, 1997 and 1998 and for the quarter ended March 31, 1999.

Defendant Garlan Braithwaite ("Braithwaite") was Vice President–Finance and Principal Accounting Officer of AVS from February 1999 until December 2, 1999.

Braithwaite also signed the June 10, 1999 Prospectus.

Defendant Harold M. Woody ("Woody") was the Executive Vice President of Sales and Marketing of AVS, a director of AVS, and President of AVS Leasing Company, a wholly owned subsidiary of AVS. Woody also was a member of the Executive Committee of the Board of Directors and signed the June 10, 1999 Prospectus.

Defendant George F. Baker III ("George Baker") served as a member of AVS' Board of Directors from July 1998 until he resigned on June 25, 1999, two years before the expiration of his term. George Baker also was a member of the Executive Committee of the Board of Directors and signed the June 10, 1999 Prospectus.

Defendant Jeffrey N. Greenblatt ("Greenblatt") served as a member of AVS' Board of Directors from July 1998 until he resigned on June 25, 1999, one year before the expiration of his term. Greenblatt was a member of the Audit Committee of the Board of Directors and signed the June 10, 1999 Prospectus.

Defendant Joseph E. Civiletto ("Civiletto") was AVS' Chief Financial Officer from the beginning of the Exchange Act class period (April 30, 1997) until he left the company in February 1999. It is alleged that with knowledge of and actual participation in the massive accounting fraud, Civiletto signed AVS' fraudulent 1997 Report on Form 10–K, and AVS' fraudulent Reports on Form 10–Q for the quarters ended March 31, June 30, and September 30, 1997, and March 31, June 30, and September 30, 1998.

Defendant AA is an international accounting firm that is alleged to have served continually as AVS' auditor since at

least December 31, 1996, and issued unqualified opinions for the years ended December 31, 1997 and 1998. On June 10, 1999, AA issued a Consent Letter, included in the Prospectus, which consented to the use of its name and audit reports for the periods ended December 31, 1997 and 1998. In connection with the issuance of the Consent Letter, AA conducted a subsequent events review whereby, among other things, it reviewed AVS' financials for the interim period ended March 31, 1999, and consented to its designation as experts in the Prospectus and its association with the March 31, 1999 financial statements.

## B. Securities Act Allegations

The Sections 11 and 15 of the Securities Act claims allege misrepresentation and omission of material facts in the Prospectus for the June 16, 1999 secondary offering ("Offering"), based upon false and misleading financial statements included in the Prospectus for the periods ended December 31, 1997 and 1998 and for the three month period ended March 31, 1999. The financial statements allegedly were false and misleading in violation of GAAP due to improper recognition of revenue and overvaluation of inventory. AVS has admitted that the financial results for the quarter ended March 31, 1999 were false and overstated net income by at least 14.8% and that the financial results for the year ended December 31, 1998 were false and overstated gross margins by $3,110,000, resulting in a net income overstatement of at least $1.9 million or 8%.

Plaintiff filed suit under Section 11 against the issuer, AVS, the individuals who signed the Prospectus, Dale Baker, Woody, Braithwaite, George Baker, and Greenblatt, and the outside auditor who expertised the false financial statements, AA. Plaintiff filed suit under Section 15, controlling person liability, against Defendants Dale Baker and Woody.

The Security Act claims specifically do *not* include any allegations of scienter. Plaintiff attempts to artfully craft these claims to avoid Federal Rule of Civil Procedure 9(b)'s requirement of pleading fraud with particularity by not incorporating these portions of the complaint (¶¶ 7–33) when addressing the Exchange Act claims.

## C. Exchange Act Claims

Plaintiff separately alleges violations of Section 10(b) and Rule 10b–5 promulgated thereunder, as well as Section 20(a) of the Exchange Act, on behalf of all persons (other than Defendants) who purchased or otherwise obtained AVS stock during the period of April 30, 1997 through and including April 14, 2000 (the "Class Period"). Plaintiff alleges that Defendants "cooked" AVS' books in order to report strong revenues, profits, and growth rates and to inflate the price of its stock in the Offering and in connection with the acquisition of other companies. Plaintiff claims that AVS' undisclosed improper accounting practices resulted in AVS' issuance of artificially inflated financials, an overstatement of net income, revenue, inventory, and other assets.

On April 14, 2000, in AVS' 1999 Form 10–K filed with the SEC, AVS announced that its financial statements for 1998 and the first three quarters of 1999 were materially false and misleading because they included at least fifteen transactions where revenue was improperly recognized, including barter and contingent transactions totaling over $45 million. For the quar-

ters ended March 31, June 30, and September 30, 1999, AVS' net income was overstated by 14.8%, 16.2%, and 9.6%, respectively, and for the quarter and year ended December 31, 1998, revenue was overstated by $12.8 million and gross margin by $3,110,000, which resulted in a net income overstatement for the quarter and year ended December 31, 1998 of 30% and 8%, respectively. During the Class Period, AVS' stock traded as high as $47 ⁵⁄₁₆ per share. The April 14, 2000 announcement allegedly caused AVS's stock to drop to as low as $3 ¾ per share.

Plaintiff details by quarter and for the entire year the alleged minimum amount that net income was overstated by percentage (a) in 1997, a 159% overstatement for the quarter ended March 31, 1997; a 61% overstatement for the quarter ended June 30, 1997; a 197% overstatement for the quarter ended September 30, 1997; an 80% overstatement for the quarter ended December 31, 1997; and a 101% net income overstatement for the year ended December 31, 1997; (b) in 1998, a 114% overstatement for the quarter ended March 31, 1998; a 45% overstatement for the quarter ended June 30, 1998; a 23% overstatement for the quarter ended September 30, 1998; a 95% overstatement for the quarter ended December 31, 1998; and a 55% net income overstatement for the year ended December 31, 1997; and (c) in 1999, a 32% overstatement for the quarter ended March 31, 1999; a 42% overstatement for the quarter ended June 30, 1999; and an 18% overstatement for the quarter ended September 30, 1999.

The Section 10(b) and Rule 10b–5 claims are levied against Defendants AVS, Dale Baker, Braithwaite, Woody, and Civiletto (the "AVS Defendants"), as well as AVS' outside auditor, Defendant AA. The Section 20(a) claims are levied against Defendants Dale Baker and Woody.

### 1. AVS Defendants

Plaintiff identifies five ways in which the AVS Defendants "cooked" the company's books.

### a. Bogies

First, Plaintiff alleges that at the end of financial quarters, the AVS Defendants would create bogus sales, which were know within the company as "bogies," in order to create the appearance of achieving sales results. In a typical bogie, false invoices for engines or engine parts were generated at the company's headquarters in Miami by the AVS Defendants and transmitted through the company's computer system to its warehouses where the invoices were printed. The fraudulent invoices were "picked," or assembled, by employees at the warehouses, but warehousing supervisors, at the direction of Defendants Dale Baker, Woody, Civiletto, and Braithwaite, instructed employees not to ship the bogie orders. (However, in many cases the invoices were never "picked" by the employees because the product was not at the warehouse.) After the close of the quarter, employees were ordered by their supervisors, at the direction of Defendants Dale Baker, Woody, Civiletto, and Braithwaite, to manually cancel the bogie orders in the computer system. While the complaint alleges that bogies were done at the end of each quarter, Plaintiff specifically identifies three such transactions during the final days of December 1998:(1) CF6 jet engine for approximately $1.5 million, (2) CFM–56 wide-body engine for between $2–$3 million, and (3) JT–8 Pratt and Whitney engine.

### b. Buy–Back Transactions

Second, Plaintiff alleges that the AVS Defendants engaged in buy-back transactions with friendly companies. In this alleged scam, AVS shipped aircraft engines to friendly companies and recorded revenue. The friendly companies then would break down the engines into parts and sell the parts back to AVS, either directly or though another related company. Plaintiff identifies a suspect transaction for the sale of an engine by AVS to Nortech at the end of the December 31, 1998 quarter, where Nortech allegedly held the engine until after the end of the following quarter and then returned it to AVS. Plaintiff also identifies two other companies, Chromalloy and Jet International, LLC, who engaged in buy-back transactions with AVS for JT–8D and JT–9 engines during the same quarter. These two companies allegedly broke down the engines and sold the part back to AVS either directly or through another related company.

### c. Bill and Hold Transactions

Third, Plaintiff claims that the AVS Defendants caused the company to enter into "bill and hold" transactions with customers, which violated GAAP. The AVS Defendants would approach customers who wanted parts at some future date and paid these customers so that they would sign documents stating that the customer received the parts in the current quarter, in order to inflate revenues at the end of financial reporting quarters. At the end of December 1998, AVS entered into a bill and hold transaction with South African Airlines for a JT8 engine. AVS recognized the revenue on this sale even thought the engine was still being repaired by Cefco and had not been shipped to South African Airlines. Additionally, this claim alleges that the AVS Defendants caused the company to store inventory at certain customers, including Lufthansa, British Aerospace, and British General Electric. AVS booked revenue on certain of this inventory and also included those parts in AVS' inventory.

### d. Barter Transactions

Fourth, Plaintiff alleges that the AVS Defendants improperly recognized revenue on barter transactions where AVS received inventory for aircraft parts. This claim alleges and AVS has admitted that for the quarter ended December 31, 1998, it improperly recognized $12.8 million of revenue and $3.1 million of gross profit on one improper barter transaction. This one transaction resulted in an overstatement of AVS' net income for the year and the fourth quarter of 1998 of $1.9 million, or 8.0% and 30.0%, respectively.

### e. Inventory Overstatements

Lastly, Plaintiff alleges that the AVS Defendants violated GAAP by failing to write-down material amounts of obsolete and defective inventory, resulting in a material overstatement of the company's net income and earnings per share. Plaintiff alleges that for the year ended December 31, 1997, at least 30% of the company's reported inventory was overvalued by at least $8 million. Many items of inventory were classified as "new" or "overhauled" where they should have been classified as "irreparable" or "unserviceable." With the latter classifications, these items were worthless. Other items, likewise, were worthless because they did not have proper documentation and could not be sold without such "birth papers." Additionally, AVS' inventory values and earnings allegedly were materially inflated because the

AVS Defendants failed to reduce the company's inventory to the lower of cost or market value, in violation of GAAP and Accounting Research Bulletin No. 43. On April 14, 2000 (after the filing of this lawsuit), the company disclosed that on December 31, 1999, inventory was overstated by approximately $38.7 million.

Plaintiff references two examples of significantly overvalued inventory. The first is data plates, which are metal plates that are inscribed with part and serial numbers and then attached as labels to other parts, including engines. Data plates normally should be valued at $2. However, at least one thousand data plates were listed on the company's computer system during the Class Period using the part or engine serial numbers that had been inscribed on them. Thus, data plates that were meant to label engines or engine parts were valued on AVS' books as if they were the actual engine parts or entire engines in some cases. Second, Plaintiff references nacelles, which are housings for aircraft engines, as another example of significantly overvalued inventory. During the Class Period, nacelles were carried on AVS' books as having a value of between $250,000 and $300,000 each. Plaintiff contends that these nacelles were "so beat up" that they should have been classified as "Beyond Economical Repair" or "worthless." A number of potential AVS customers purportedly examined these nacelles during the Class Period and opted against purchasing them because of their poor condition.

### 2. Braithwaite Internal Memorandum

Plaintiff additionally alleges that in the summer of 1999, B.F. Goodrich Company ("Goodrich") had discussions with AVS about acquiring AVS. While negotiating and examining AVS' financial condition, Goodrich learned about some of the "bogies" and other improper revenue recognition practices addressed above. After learning of such, Goodrich abandoned the planned acquisition. Defendant Braithwaite, then Vice President of Finance at AVS, issued an internal memorandum after the release of AVS' June 30, 1999 financial results. This memorandum instructed AVS employees to no longer recognize revenue where the product had not been shipped. Plaintiff contends that this memorandum resulted in a lessening, but not curtailment, of the improper accounting practices during the September 30, 1999 quarter.

### 3. Arthur Anderson

AA served as AVS' outside auditor and, in this capacity, conducted audits of AVS' financial statements in accordance with Generally Accepted Auditing Standards ("GAAS") and certified to the investing public that AVS' 1997 and 1998 financial statements were free of material error and complied with GAAP. AA also consented to the use of AA's report on AVS' 1997 and 1998 financial statements in AVS' Forms 10–K and the company's Prospectus. Plaintiff contends that AA's issuance of materially false reports on the 1997 and 1998 financial statements and AA's failure to require revision of AVS' false interim financial information were in violation of GAAS. To buttress this position, Plaintiff highlights that within nine months of AA's "clean" 1998 audit report and within six months of the Prospectus, AVS wrote down $38.7 million in inventory (in excess of 12% of its reported inventory valuation) and reversed fifteen barter and contingent transactions, totaling over $45 million in revenue, because these transactions were

improperly recognized as revenue during 1998 and 1999.

Plaintiff alleges that AA was aware that AVS' inventory was materially overstated because AA conducted physical inventories of the warehouses and other facilities. AA visited parts and engine warehouses and spoke with warehouse personnel. Thus, Plaintiff contends that AA was aware that AVS' valuation of four A–300 aircraft were in excess of their net realizable value by at least $16 million. Moreover, it is alleged that AA knew that AVS' internal inventory accounting control systems had material weaknesses, which caused the amount of AVS' inventory to be inaccurate.

## *LEGAL ANALYSIS*

### A. Securities Act Claims

#### 1. Section 11

■ Plaintiff alleges in the Section 11 of the Securities Act claim that the Prospectus issued in conjunction with AVS' Offering misrepresented and omitted material facts because the financial statements included in the Prospectus were overstated by material amounts in violation of GAAP. Plaintiff lodges this claim against the issuer, AVS, as well as the individuals who signed the Prospectus, Dale Baker, Woody, Braithwaite, George Baker, and Greenblatt, and the outside auditor who expertised the false financial statements, AA.

Section 11 establishes a private cause of action where a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k; *see Herman & MacLean v. Huddleston,* 459 U.S. 375, 381, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) ("If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case."). Under Section 11, a cause of action may be levied against the issuer of the securities, the issuer's directors or partners, the underwriters of the offering, and accountants who are named as having prepared or certified the registration statement. *Ehlert v. Singer,* 245 F.3d 1313, 1315 (11th Cir.2001) (citing 15 U.S.C. § 77k(a)).

Defendants raise a variety of arguments as to why the Court should dismiss this claim. First, Defendants posit that Plaintiff may not successfully assert the Section 11 claim without resorting to the allegations of the Section 10(b) of the Exchange Act claims. This allegation is interrelated with another of Defendants' arguments, that Plaintiff's Section 11 claims sound in fraud. Defendants also argue that the alleged misrepresentations and omissions were not material.

As addressed at the onset of this Order, Plaintiff attempts to artfully craft the complaint in such fashion where there are no allegations in the Section 11 claim of scienter, which, of course, would implicate Rule 9(b)'s requirement of pleading fraud with particularity. Under the Section 11 claim, Plaintiff references AVS' admission that net income was overstated by at least 14.8% for the quarter ended March 31, 1999, and that for the year and quarter ended December 31, 1998, net income was overstated by $1.9 million, or 8.0% and 30.0%, respectively. Moreover, this claim alleges that AVS failed to write-down material amounts of inventory that was defective or obsolete during fiscal 1997, 1998, and the first quarter of 1999.

It is permissible for a plaintiff to allege a Section 11 claim and a Section 10(b) of the Exchange Act claim in the same complaint, even where both claims rely upon similar if not identical facts. As the Supreme Court has instructed, the Securities and Exchange Act comprise "interrelated components of the federal regulatory scheme governing transactions in securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Sections 11 and 10(b) "involve distinct causes of action and were intended to address different types of wrongdoing." *Herman & MacLean*, 459 U.S. at 381–82, 103 S.Ct. 683 (stating that Section 11 places a "relatively minimal burden" on a plaintiff while Section 10(b) is a " 'catchall' antifraud provision" requiring a plaintiff to carry a heavier burden).

Plaintiff amply establishes a *prima facie* claim under Section 11 by alleging various material misrepresentations and omissions in the Prospectus with respect to net income and inventory valuation. *See Herman & MacLean*, 459 U.S. at 382, 103 S.Ct. 683 (noting that liability under Section 11 is "virtually absolute, even for innocent mistakes."). There is no reliance on the Exchange Act claims under the Section 11 claim of the complaint. Plaintiff steadfastly does not allege scienter under this claim. Accordingly, these allegations shall be interpreted as either innocent or negligent misrepresentations and omissions, as opposed to fraudulent misrepresentations and omissions that would trigger Rule 9(b). *E.g. Sherleigh Assoc., LLC v. Windmere–Durable Holdings, Inc.*, 98–2273, 2000 U.S.Dist. LEXIS 9772, *39–40 (S.D.Fla. June 8, 2000) (finding that Section 11 claim did not sound in fraud where the complaint separately alleged Section 11 and Exchange Act claims and the Section 11 claim was silent on whether the defendants intentionally withheld information).

Moreover, materiality is a question of fact that typically is not resolved at this stage of the proceeding. *E.g., In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1364 (S.D.Fla.2001) (stating that dismissal at the motion to dismiss stage is appropriate only where the misrepresentations are "so obviously unimportant to an investor that reasonable minds cannot differ.") (citation omitted). Defendant AVS' argument that net income is an inappropriate barometer for determining the materiality of the alleged misrepresentations and omissions is unavailing. AVS argues that materiality should be gauged by revenues, highlighting the fact that AVS' revenue was overstated by only 2.6% for the year ended December 31, 1998, by only 3.9% for the quarter ended March 31, 1999, and by 6.1% for the quarter ended June 30, 1999. Yet AVS references in its reply *Ganino v. Citizens Utilities Co.*, 228 F.3d 154 (2nd Cir.2000), where total revenues for 1996 were overstated by only 1.7% and the Second Circuit reversed the district court's order of dismissal, which was based upon lack of materiality. The relevant inquiry is both qualitative and quantitative; it is not merely an inquiry into which litigant's accountant can spin the company's financial statements to better argue materiality or nonmateriality. To the extent that the Court may find AVS' argument persuasive, such argument is negated by the fact-based nature of the materiality inquiry.

Defendant Braithwaite joined the company just one month prior to the quarter ended March 31, 1999, and signed the Prospectus. It is Braithwaite's position that he acted reasonably, thus raising a due diligence defense. Braithwaite's due diligence defense is beyond the four corners

of the complaint and cannot be resolved at the motion to dismiss stage of the proceeding. *E.g., In re Southeast Banking Corp. Sec. & Loan Loss Reserves,* 147 F.Supp.2d 1348 (S.D.Fla.2001).

Defendant AA argues that an auditor may not be held liable for unaudited financial statements, regardless of what internal procedures the auditor performed for the client. The Court need not reach this issue because it is not dispositive of Plaintiff's Section 11 claim against AA. Plaintiff alleges misrepresentations and omissions for the financial statement for the year ended December 31, 1998, and also alleges that AVS failed to write-down material amounts of inventory that was defective or obsolete during fiscal 1997 and 1998. These allegations sufficiently establish a *prima facie* claim against AA in its capacity as the outside auditor who expertised the false financial statements for 1997 and 1998.

### 2. Section 15

To state a claim for controlling person liability under the Securities Act against Defendants Dale Baker and Woody, Plaintiff must establish that these defendants had (1) the power to control the general affairs of AVS at the time of the alleged violation, and (2) the power to control or influence the specific policy that resulted in primary liability under Section 11. *Unicapital,* 149 F.Supp.2d at 1367 (citing *Brown v. Enstar Group, Inc.,* 84 F.3d 393, 396 (11th Cir.1996)). Defendants Dale Baker and Woody argue that they are not liable as controlling persons because there is no primary liability under Section 11. Since the Court has found that Plaintiff has established a *prima facie* claim under Section 11, the Court rejects this argument and will permit Plaintiff's Section 15 claims to proceed.

## B. Exchange Act Claims

### 1. Section 10(b) and Rule 10b–5

Section 10(b) of the Exchange Act prohibits any person from using or employing, "in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." *Malin v. Ivax Corp.,* 17 F.Supp.2d 1345, 1350 (S.D.Fla. 1998) *citing* 15 U.S.C. § 78j(b). Rule 10b–5, promulgated thereunder, makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5. To establish a *prima facie* claim of securities fraud under Rule 10b–5, Plaintiff must allege (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which Plaintiff relied, (5) that proximately caused the injury. *Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir. 1989) (en banc).

In order to withstand Defendants' motions to dismiss, Plaintiff's fraud claims must satisfy the pleading requirements of Rule 9(b), which mandates that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.Pro. 9(b). This standard ensures that Defendants will be placed on fair notice of the grounds of the securities fraud claims, so that Defendants may frame an adequate response. *E.g., Cheney v. Cyberguard Corp.,* 2000 WL 1140306, at *4 (S.D.Fla. July 31, 2000). Judge Gold in *Cheney* detailed the standard as follows:

> The Rule will be satisfied if the complaint sets forth what statements or omissions were made in what documents

or oral representation; the time and place of the statements or omissions; who made the statements; the content of the statement and the manner in which they misled the plaintiffs; and what the defendant "obtained as a consequence of the fraud."

*Id.* (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997)).

■ Moreover, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b) (the "Reform Act"), sets forth a heightened pleading requirement that "strengthens the pleading requirements for fraud and scienter." *Malin,* 17 F.Supp.2d at 1352. First, the Reform Act requires Plaintiff to specify each allegedly misleading statement and the specific reason or reasons why the statements are misleading. *Cheney,* 2000 WL 1140306, at * 4 (stating that this provision of the Reform Act is "even more specific than the Rule 9(b) standard."). And second, the Reform Act requires Plaintiff, for each claimed misrepresentation, to allege "with particularly facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). In the Eleventh Circuit, Plaintiff must allege "with particularity that a defendant acted with a severely reckless state of mind ... to state a claim for civil liability under § 10(b) and Rule 10b–5." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1283 (11th Cir.1999).

It is Plaintiff's contention under this claim that AVS' financial statements were materially false when issued, that the AVS Defendants violated GAAP, and that AA violated GAAS, based upon the alleged massive accounting fraud discussed in the

Background Section of this Order. Primarily, Defendants argue that dismissal is warranted because Plaintiff's fraud claims (1) fail to allege fraud with particularity and (2) lack adequate allegations of scienter. The Court shall address these two arguments first, and then address other arguments raised by certain of the defendants.

### a. Fraud with Particularity

### i. AVS Defendants

■ Plaintiff alleges five different ways that the AVS Defendants allegedly committed a massive accounting fraud in violation of GAAP, which resulted in AVS' financial statements for the years ended 1997, 1998, and the first three quarters of 1999 being materially false: bogies, buyback transactions, bill and hold transactions, barter transactions, and inventory overstatements. At the onset, the Court notes that Plaintiff identifies in the complaint the specific financial statements that are alleged to be materially false. Moreover, the complaint details the revenue and net income by which AVS' financial statements were overstated for each applicable quarter. "Under the group pleading doctrine, allegations of securities fraud based upon statements in group published information are presumed to be the collective action of corporate officers involved in the day-to-day management of the corporation." *In re Sunbeam Sec. Litig.,* 89 F.Supp.2d 1326, 1340 (S.D.Fla.1999).

The AVS Defendants' arguments focus primarily on the level of particularity of the five ways in which the accounting fraud was perpetrated.[1] In response to Defendants' arguments, Plaintiff directs

---

1. The AVS Defendants also argue that certain of the alleged suspect transactions (i.e. buy-

the Court's attention to *In re World Access, Inc.*, 119 F.Supp.2d 1348 (N.D.Ga. 2000). In *World Access*, the plaintiffs alleged accounting fraud resulting in materially false financial statements, which included allegations of "bill and hold" practices similar to those alleged in the instant complaint. The plaintiffs in *World Access* also identified two significant customers who had grievances concerning performance of the defendants' product. In denying the defendants' motion to dismiss, the court concluded that:

> It is not fatal to the complaint that it does not describe in detail each single specific transaction in which Defendant transgressed, by customer, amount, and precise method. Ultimately, for purposes of Rule 9(b) as well as the heightened pleading standards of the [Reform Act], allegations of specific problems undermining Defendants' optimistic claims coupled with allegations of dissemination of materially false statements are sufficient.

*Id.* at 1355; *see Carley Capital Group v. Deloitte & Touche, LLP*, 27 F.Supp.2d 1324, 1335 (N.D.Ga.1998), (disagreed with on other grounds in *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir.2001)) (finding *prima facie* claim of accounting fraud where plaintiffs (1) alleged specific violations of GAAP, and (2) alleged that the violations resulted in financial statements that improperly overstated and recognized revenue).

In the instant action, there are specific detailed allegations concerning the five

ways in which AVS violated GAAP, including the names of the other companies involved in many of the transactions, the approximate date of many of the transactions, individual defendants involved in certain of the transactions, and the specific parts involved in many of the transactions. While every complaint could be more detailed,[2] the Court finds that the instant complaint contains more detailed allegations concerning the underlying GAAP violations than the plaintiffs' allegations in *World Access* and *Carley Capital.*

### ii. Arthur Anderson

■ Defendant AA argues that Plaintiff has failed to identify with the requisite particularity any materially misleading statements attributable to AA. Yet the complaint alleges that AA falsely represented in its audit opinions that AVS' financial statements for 1997 and 1998 were presented in accordance with GAAP and that AA's audit of AVS' financial statements had been performed in accordance with GAAS. The complaint also alleges that AA falsely represented in its "Consent Letter," included as an exhibit in AVS' Prospectus, that it was not aware of any violation of GAAP in AVS' unaudited financials for the quarter ended March 31, 1999, as well as that AA was not aware of any material changes in the 1997 and 1998 financial statements. Additionally, the complaint alleges a violation of GAAS against AA for its failure to require revision of AVS' false interim financial information.

---

back transactions) are nothing more than AVS doing its business as a buyer and seller of aviation parts. This is a factual argument that is not suited for adjudication at the motion to dismiss stage of the proceeding. The Court shall revisit this issue at a later date, if necessary.

2. In fact, Plaintiff states that it has learned of additional detailed information concerning AVS' conduct, which will be included in a revised complaint if the Court were to require such.

Based upon Plaintiff's allegations, the Court rejects AA's argument that the complaint lacks the requisite particularity. *E.g., In re Pediatric Services of Am., Inc.,* No. 99–670, slip op. at 50 (N.D.Ga. June 20, 2000) (finding *prima facie* claim against auditor where the plaintiffs "identified dated financial statements audited and approved by Ernst & Young that contain allegedly false or misleading statements; they have detailed specifically what portions of the financial statements are allegedly false and misleading and why they are misleading; and they have described in detail how the specific GAAP and GAAS violations contributed to the alleged fraud.").

### b. Scienter

■ Defendants argue for dismissal because Plaintiff has failed to establish that the Defendants acted with "severe recklessness" concerning the alleged accounting fraud. While the group pleading doctrine may assist Plaintiff in satisfying the Reform Act's and Rule 9(b)'s particularity requirements, it does not apply to the Reform Act's scienter requirement. *E.g., Sunbeam,* 89 F.Supp.2d at 1341; *Shipping Fin. Servs. Inc. v. Abel Telcom Holding Corp.,* No. 98–8633, slip op. at 16 (S.D.Fla. Dec. 7, 2000). "The Reform Act requires that a complaint (1) state with particularity facts (2) giving rise to a strong inference (3) that each separate defendant acted with scienter (4) with respect to each act or omission alleged." *Id.* (citing 15 U.S.C. § 78u–4(b)(2)). The scienter of a corporation's officers may be imputed to the corporation itself under general agency and corporate law principles. *Cheney,* 2000 WL 1140306, at *7.

### i. AVS Defendants

Plaintiff attempts to establish that the AVS Defendants had the requisite state of mind through (a) the magnitude, nature, and pervasiveness of the accounting fraud; (b) the circumstances surrounding B.F. Goodrich Company's decision to abandon the planned acquisition of AVS; (c) the internal Braithwaite memorandum instructing AVS employees to no longer recognize revenue when the product had not been shipped; and (d) a variety of allegations of motive and opportunity. With respect to specific allegations levied against the individual defendants, Plaintiff alleges that Defendants Dale Baker, Braithwaite, Civiletto, and Woody orchestrated the alleged accounting fraud practice of improperly recognizing revenue on "bogies." Moreover, Plaintiff alleges that Defendants Dale Baker and Woody berated Braithwaite for his internal memorandum regarding improper revenue recognition and ultimately removed him.

The AVS Defendants trumpet that there are no allegations of insider trading and that Defendants Dale Baker, Braithwaite, and Civiletto purchased additional shares of stock during the alleged scheme as indicia that the AVS Defendants lack the requisite state of mind for the alleged accounting fraud. The AVS Defendants also argue that this lawsuit is based upon "fraud by hindsight," as AVS admitted that there were fifteen transactions during 1998 and 1999, totaling $45 million, where revenue was improperly recognized. The AVS Defendants refute Plaintiff's contention regarding the magnitude, nature, and pervasiveness of the accounting fraud. Lastly, the AVS Defendants assert that motive and opportunity are not relevant to the Court's inquiry under Eleventh Circuit law. The Court shall address these arguments in reverse order.

■ In *Bryant,* the Eleventh Circuit held that "allegations of motive and oppor-

tunity to commit fraud, *standing alone,* are [not] sufficient to establish scienter in this Circuit." *Bryant,* 187 F.3d at 1285 (emphasis added). The court continued by opining that "motive and opportunity are specific kinds of evidence, which along with other evidence might contribute to an inference of recklessness or willfulness." *Id.* at 1286–87 (stating that motive and opportunity are often "highly" relevant) (citation omitted). Thus, this Court shall incorporate Plaintiff's allegations of motive and opportunity into its analysis of scienter and accord these allegations the appropriate weight.

■ In support of the motive and opportunity allegations, Plaintiff highlights AVS' desire to consummate serval mergers and acquisitions between 1997 and 1999 using AVS' stock as consideration. Plaintiff identifies three such transactions where AVS' stock was used. Plaintiff also claims that AVS concealed the true nature of the company's financial condition and results of operations in order to avoid defaulting on AVS' loan covenants. Moreover, AVS was motivated to artificially inflate the price of its stock in conjunction with its Offering, where $2.3 million shares of AVS' stock were sold. The Court finds that Plaintiff's motive and opportunity allegations are entitled to limited weight "[b]ecause such motives can be ascribed to virtually all corporate officers and directors...." *Malin,* 17 F.Supp.2d at 1361 (finding lack of scienter based upon "limited" motive and opportunity allegations combined with GAAP violations).

■ However, the Court does not find AVS Defendants' arguments concerning the magnitude, nature, and pervasiveness of the accounting fraud compelling. The Court notes that Defendants have con-

ceded GAAP violations. Defendants argue that the Court should not find the magnitude of this alleged fraud significant, as revenue was only overstated 2.6% for fiscal 1998 and 4.8% for fiscal 1999. In contrast, Plaintiff argues, for example, that there was a 101% net income overstatement for fiscal 1997 and a 55% net income overstatement for fiscal 1998. The Court notes that Defendants' figures are (a) limited to AVS' admission of fifteen transactions where revenue was improperly recognized during 1998 and 1999, and (b) do not estimate the impact that Plaintiff's additional accounting fraud allegations have upon AVS' financials. As such, the Court finds Plaintiff's argument on this point more persuasive. Additionally, the Court finds that the pervasiveness of the accounting fraud, ranging from accounts receivables and the way AVS records revenue to inventory valuation over a three year time period, supports Plaintiff's position. *E.g., Sunbeam,* 89 F.Supp.2d at 1338 (finding scienter against two defendants based in part upon "the diverse and continuing nature" of the alleged accounting fraud).

Moreover, the Court finds compelling Plaintiff's scienter allegations that AVS was confronted directly with the ongoing accounting fraud, in connection with the B.F. Goodrich Company negotiations, as well as the Braithwaite internal memorandum. With respect to Goodrich, Plaintiff alleges that this company abandoned its plan to acquire AVS after learning about certain of the "bogies" and other improper revenue recognition practices. The Goodrich incident allegedly led to Braithwaite's transmission of the internal memorandum instructing AVS employees to no longer recognize revenue where the product had not been shipped. Plaintiff alleges that Braithwaite was berated by Defendants Dale Baker and Woody and subsequently

fired for his transmission of the internal memorandum.

Instead of berating and eventually firing Braithwaite, Dale Baker and Woody should have taken remedial measures to identify the accounting improprieties and rectify the situation. Dale Baker and Woody's actions lead to an inference that members of AVS' senior management were aware of these practices prior to the Braithwaite memorandum, or, at bottom, were severely reckless in not knowing about these practices prior to the memorandum. Once the memorandum was transmitted, AVS was placed on actual notice of accounting improprieties, or at least that there was a potential likelihood of accounting improprieties, which should have led to swift investigation. This analysis holds true for the B.F. Goodrich Company negotiations as well.

Lastly, the insider purchases by Defendants Dale Baker, Braithwaite, and Civiletto present the Court with further information to base the determination of whether scienter exists. It is Defendants' position that there can be no scienter because Defendants would have been defrauding themselves by investing in AVS during the Class Period. The pitfalls with adopting Defendants' argument, as a blanket rule, are clear. Corporate officers would be inclined, or perhaps instructed by counsel, to purchase stock after the initiation of a securities fraud lawsuit to negate any possible inference of fraud. Accordingly, the Court declines to adopt a general holding that where there are insider purchases, there can be no scienter. Rather, the Court shall examine the circumstances surrounding each defendant who purchased stock to determine what conclusions to draw.

Plaintiff argues that Defendants' purchases should be viewed as evidence of scienter because these individuals purportedly believed that the accounting fraud would continue and, in turn, that AVS' stock prices would continue to be artificially inflated. With respect to Dale Baker, the Chief Executive Officer of AVS, the Court finds a degree of merit in Plaintiff's contention, but only when viewed in light of the other scienter allegations levied against him. Likewise, Civiletto, the Chief Financial Officer of AVS, is alleged to be one of the orchestrators of the "bogies." Thus, the Court is unable to find that his insider purchases completely negate an inference of scienter.[3] However, Braithwaite's circumstances are somewhat different. He joined the company in February 1999, and is alleged to have been involved in the "bogies." But he is also the individual who attempted to prevent further fraud by issuing the internal memorandum. At this stage of the proceeding, the Court must make all inferences in favor of Plaintiff. As such, it is a permissible inference that Braithwaite was aware of the accounting fraud, based upon his role in the "bogies." Once the Goodrich negotiations disclosed to all of AVS that AVS' accounting practices were suspect, Braithwaite may have felt the need to take some attempted corrective measures, including the internal memorandum, to cover up the alleged massive accounting fraud of which he was a part. These circumstances lead towards a finding of scienter at this stage of the proceeding. *Cf. Moriarty v. Molina,* No. 99–225, slip op. at 16 (S.D.Fla.

---

**3.** The Court is cognizant that Civiletto had left AVS prior to Braithwaite's issuance of the internal memorandum.

July 29, 1999) (quoting *SEC v. Adler*, 137 F.3d 1325, 1342 (11th Cir.1998)) ("Indeed, in securities law the general rule still holds 'fact-intensive issues should be decided by a jury, which is in the position to observe demeanor of witnesses and make appropriate credibility determinations.' ").

However, the Court reserves judgment on whether Plaintiff has established scienter against the AVS Defendants at this point, in view of the fatal deficiency in the Exchange Act allegations concerning failure to plead confidential sources, which is discussed below. Once the Court has the benefit of Plaintiff's allegations of confidential sources, the undersigned will be in much better position to determine whether scienter exists.

### ii. Arthur Anderson

 Plaintiff attempts to establish AA's scienter through the (a) magnitude of the financial overstatements, (b) numerous GAAP and GAAS violations, and (c) various "red flags" that were known to and/or severely disregarded by AA. The purported red flags included the "bill and hold" transactions, where AA compared the terms of those transactions with the requirements of GAAP and knew that the requirements of GAAP had not been met. Despite this purported knowledge, AA permitted AVS to improperly record revenue on these transactions. With respect to the "buy-back" transactions, AA knew that material amounts of revenue on engine sales were later reversed and that AVS was purchasing parts from companies that it was selling engines. Additionally, AA knew that some of these engines were returned to AVS the following quarter.

It is Plaintiff's contention that AA was aware of the circumstances described above because AA performed reviews of AVS' quarterly financial statements, performed due diligence reviews of the acquisitions completed during the Class Period, performed a "subsequent events review" of AVS' financials prior to the issuance of the June 16, 1999 Prospectus, and attended Audit Committee meetings and answered the Committee's questions concerning the company's financial statements and internal controls.

AA, Plaintiff's outside accountant since at least December 31, 1996, attempts to refute Plaintiff's "magnitude" allegations by focusing on the 1999 quarterly statements and the fact that AA did not audit these statements. This argument missed the point, as Plaintiff's allegations date back to fiscal years 1997 and 1998, which AA audited. As addressed above within the context of the AVS' Defendants scienter allegations, the Court finds a limited inference of scienter based upon the magnitude allegations. These allegations, coupled with Plaintiff's allegation that AA was aware that AVS' inventory accounting control systems had material weaknesses, lead to an inference of scienter.

AA attempts to refute any inference of scienter by challenging the purported red flags. The Court finds merit in AA's argument, as Plaintiff's red flags consist primarily of rehashes of the GAAP violations. With respect to the "buy-back" transactions, such practice should not have been viewed as a red flag to AA because AVS' business consisted at the time of selling engines and engine parts. It would not be unusual for AVS to buy and sell engines and/or engine parts from the same company during one or two quarters. Thus, such entries in AVS' books would not trigger a duty on AA's part to investigate further.

Lastly, AA argues that any inference of scienter should be countered because

Plaintiff has admitted in the First Amended Complaint that AA "prevented Aviation Sales from engaging in fraudulent practices in the December 1999 quarter." (First Amended Complaint, at ¶¶ 8, 92). Such allegations are conspicuously absent from the current Second Amended Complaint. Such preventive measures by an outside auditor may counter an inference of scienter. *Cheney*, 2000 WL 1140306, at *12. At most, Plaintiff has alleged "fraud by hindsight" and nothing more than ordinary negligence against AA, based in large part upon AVS' admission that there were fifteen transactions where revenue was improperly recognized.

The Court finds this case quite distinguishable from *Sunbeam*, where Judge Middlebrooks found that scienter was alleged on the part of AA. In *Sunbeam*, a Sunbeam employee tipped off AA that Sunbeam had overstated its restructuring reserves by expending in 1996 what should have been expenses in 1997. Moreover, a "knowledgeable" Sunbeam employee alerted AA that Sunbeam's "bill and hold" sales should be examined because they were invalid. There was an article in *Barron's* that accused Sunbeam of manipulating its 1996 and interim 1997 financial statements, which were at issue in the case. AA also failed to stop Sunbeam from recognizing revenues from guaranteed sales and consignment sales transactions, which were in violation of GAAP. *In re Sunbeam*, 89 F.Supp.2d at 1344.

The instant complaint contains none of these allegations. There are no allegations that an AVS employee alerted AA to the alleged accounting improprieties. There is no allegation that a publication, such as *Barron's*, published an article questioning AVS' suspect accounting practices. Perhaps an analogy may be drawn

between the Braithwaite memorandum and the *Barron's* article, but Plaintiff does not allege that AA was aware of this memorandum. Moreover, Plaintiff has conceded that AA took preventative measures to stop the accounting fraud.

Under present circumstances, there exist allegations of GAAP and GAAS violations, without any legitimate red flags, coupled with limited "magnitude" arguments. There are no allegations of actual awareness of accounting fraud. The limited scienter allegations are refuted by AA's preventative measures to stop the accounting fraud. As such, the Court finds that Plaintiff has failed to establish scienter against AA.

### c. Confidential Sources

■■■ The parties have devoted a considerable degree of attention to whether Plaintiff must disclose confidential sources that form the basis of the Section 10(b) and Rule 10b–5 allegations. Defendants argue, citing *In re Silicon Graphics*, 970 F.Supp. 746 (N.D.Cal.1997), that the complaint contains fatal deficiencies because it does not identify any consultants, any "others in the industry," or employees of AVS who provided Plaintiff's specific information contained in the complaint.

Plaintiff rebuts this argument by referencing *Novak v. Kasaks*, 216 F.3d 300 (2nd Cir.2000), which criticizes *Silicon Graphics* for relying "primarily on the hyperbolic statements of legislators attempting (unsuccessfully) to amend the proposed Act to lighten plaintiffs' pleading burden." *Id.* at 313 (citing *Silicon Graphics*, 970 F.Supp. at 763–64). The *Novak* court determined that "where plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long

as the latter facts provide an adequate basis for believing that the defendants' statements were false." *Id.* at 314. This Court finds *Novak* persuasive and adopts its holding.

Applying the *Novak* standard to the instant complaint, the Court notes that there are some statements contained in the complaint that appear to have come from confidential sources. Yet many of these statements are supported by latter facts providing an adequate basis for believing that AVS committed accounting fraud. For example, there are detailed inventory allegations concerning data plates and nacelles, as well as allegations that many items were incorrectly classified as "new" or "overhauled" when they should have been classified as "irreparable" or "unserviceable." These allegations do not indicate the source from which the information is derived. But AVS announced (and it is alleged in the complaint) that on December 31, 1999, inventory was overstated by approximately $38.7 million. *See id.* at 312–313 (finding Reform Act's particularity requirement met under markedly similar circumstances involving inventory descriptions and a subsequent revision by the defendants).

However, there are certain bald allegations in the complaint where the court is unable to find another adequate basis for believing the allegations. These allegations concern the roles that Defendants Dale Baker, Braithwaite, Woody, and Civiletto performed in committing the alleged accounting fraud. Defendants Dale Baker, Braithwaite, Woody, and Civiletto are alleged to have orchestrated the "bogies." The Court is unable to determine how Plaintiff discovered this information, absent disclosure of confidential sources. Likewise, the Court is unable to determine how Plaintiff learned that Defendants Dale Baker and Woody berated Braithwaite after the internal memorandum and subsequently fired him, let alone how Plaintiff is aware of the existence of the Braithwaite internal memorandum. The Court is not requiring Plaintiff, at this stage of the proceeding, to provide the names of all individuals that provided information to Plaintiff. Rather, the individuals must be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.* at 314. General descriptions of the confidential sources will suffice.

### d. Safe Harbor

■■■ Defendants argue that many of the alleged misrepresentations are protected from Section 10(b) liability by the Reform Act's "safe harbor" for forward looking statements. U.S.C. § 78u–5(c)(1). However, the safe harbor provision does not protect statements that misrepresent "historical/hard or current facts." *Sunbeam*, 89 F.Supp.2d at 1339 (citation omitted). Moreover, the safe harbor provision does not apply to "financial statement[s] prepared in accordance with generally accepted accounting principles." 15 U.S.C. § 78u–5(b)(2)(A). The Court concludes, after a review of the statements in the complaint, that the great majority of the statements alleged in the complaint do not give rise to the protection of the Reform Act's safe harbor provision. *E.g., Sunbeam*, 89 F.Supp.2d at 1339 ("[I]t would be imprudent to grant Defendants' motion to dismiss based upon the possibility that some of the alleged statements may be protected by the statutory safe harbor."); *Shipping Fin. Servs. Inc. v. Abel Telcom Holding Corp.*, No. 98–8633, slip op. at 18 (S.D.Fla. Dec. 7, 2000) ("Although there

may be some statements that are forward looking, it would be imprudent for the court to dismiss the complaint at this time.")

### e. Whether to Permit Plaintiff to Replead Exchange Act Claims

▆▆▆ The Eleventh Circuit mandates that a plaintiff shall be given leave to amend the complaint only under circumstances "[w]here it appears a more carefully drafted complaint might state a claim upon which relief can be granted...." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1212–13 (11th Cir.2001) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991)). As the Court discussed earlier, Plaintiff's current complaint fails to identify confidential sources that form the basis of many of Plaintiff's material allegations. At oral argument, Plaintiff's counsel conceded this deficiency in the complaint and proffered information concerning the confidential sources. In view of the proffered testimony concerning confidential sources, the Court shall permit Plaintiff to replead these aspects of the complaint. Additionally, Plaintiff's counsel testified at oral argument that they have learned of additional factual allegations that speak to the alleged accounting fraud. These allegations will assist the Court in whether Plaintiff has pled scienter against the AVS Defendants, and, accordingly, Plaintiff may plead these facts as well in an amended complaint. However, Plaintiff's proffered testimony at oral argument concerning AA's scienter merely consisted of rehashes of Plaintiff's current allegations of GAAP and GAAS violations. Because the Court finds that an amended complaint will not state a claim under Section 10(b) against AA, Plaintiff shall not be permitted to replead Exchange Act claims against AA. *Id.*

### 2. Section 20(a)

To establish controlling person liability under Section 20, Plaintiff must allege (1) that Defendants Dale Baker and Woody had the power to control the general affairs of AVS, and (2) that Dale Baker and Woody had the power to control the specific corporate policy that resulted in the primary violation under Section 10(b). *Brown v. Enstar Group Inc.*, 84 F.3d 393, 396 (11th Cir.1996). It is Defendants' position that they are not liable under this section because there is no primary liability. Because the Court is requiring Plaintiff to replead the Section 10(b) and Rule 10b–5 claims, there can be no finding of liability under Section 20(a) at this juncture.

### CONCLUSION

It is,

ADJUDGED that Defendants' motions to dismiss the Securities Act claims is DENIED. It is also

ADJUDGED that Defendant AA's motion to dismiss the Exchange Act claim is GRANTED with prejudice. The AVS Defendants' motions to dismiss the Exchange Act claims are GRANTED without prejudice with leave to file one last amended complaint no later than *September 14, 2001.*