**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEEPHAVEN PRIVATE
PLACEMENT TRADING, LTD;
WEST END MACCABEE FUND, LP;
WETI GLOBAL FUND, LTD,

      Plaintiffs - Appellants,

v.

GRANT THORNTON & COMPANY,
a limited liability partnership,

      Defendant - Appellee,

and

RONALD W. DAW; ROBERT G.
CHAMBERLAIN; ROBERT J.
FRANKENBERG; JAMES S.
JARDINE; VIRGINIA
GOREGIOVALE, as individuals;
ELLEN H. BATES, in her capacity as
Personal Representative of the Estate
of Charles L. Bates, Jr., Deceased,

      Defendants.

No. 05-4187

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 03-CV-379-DS)**

---

Stephen P. Horvat, (Thomas R. Karrenberg and Scott A. Call, on the briefs),
Anderson & Karrenberg, Salt Lake City, Utah, for Plaintiffs - Appellants.

Brent O. Hatch, Hatch, Dodge & James, P.C., Salt Lake City, Utah, (and Richard R. Nelson, II, Cohen & Grigsby, P.C., Pittsburgh, Pennsylvania, on the brief), for Defendants - Appellees.

---

Before **KELLY**, **TYMKOVICH**, Circuit Judges and **EAGAN**,[*] District Judge.

---

**KELLY**, Circuit Judge.

---

This appeal concerns a claim brought by three institutional investors in Daw Technologies, Inc. (Daw)—Deephaven Private Placement Trading, Ltd., West End Maccabee Fund, L.P., and WETI Global Fund, Ltd (collectively, Investors)—against Daw's former independent auditors, Grant Thornton LLP (Grant Thornton), under Section 18(a) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78r(a). The district court granted Grant Thornton's motion to dismiss based principally on its determination that allegations contained in the relevant complaint were insufficient to satisfy the pleading standards of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4. It also concluded that Investors' claim was barred by the one-year limitations period provided in Section 18(c). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

---

[*] The Honorable Claire V. Eagan, District Judge, United States District Court of the Northern District of Oklahoma, sitting by designation.

**Background**

On April 28, 2000, Daw, in need of capital, sold Investors certain preferred convertible securities. Prior to the sale, Daw provided Investors with various materials, including a copy of Daw's Form 10-K for the year ended December 31, 1999, which contained a copy of Daw's December 31, 1999 financial statements (1999 financial statements). Of import here, the 1999 financial statements were audited and given an unqualified opinion by Grant Thornton. The audit report—using the standard language of the profession[1] —stated:

> [Grant Thornton has] audited the accompanying consolidated balance sheets of Daw Technologies, Inc. and Subsidiaries as of December 31, 1999 and 1998, and the related consolidated statements of operations, shareholders' equity, and cash flows for each of the three

---

[1] Though we refer to Grant Thornton's audit report throughout this opinion, different auditors may vary the wording or presentation. The variances are slight, however, because the form and content of an audit report are determined in accordance with generally accepted auditing standards (GAAS). GAAS include 10 broadly phrased standards and general principles that guide the audit function. They are classified as general standards, standards of fieldwork, and, most relevant here, standards of reporting. More specific guidance may be found in the Statements on Auditing Standards (SAS), which are periodic interpretations of the standards issued by the Auditing Standards Board (ASB) of the American Institute of Certified Public Accountants (AICPA). See AICPA, Codification of Statements on Auditing Standards (AU) §§ 110-901 (2005). Section 103 of the Sarbanes-Oxley Act of 2002 provides that auditing standards and related professional practice standards to be used in the performance of and reporting on audits of the financial statements of public companies (or issuers) are to be established by the Public Company Accounting Oversight Board (PCAOB). See 15 U.S.C. § 7213. As such, public accounting firms auditing issuers are now required to be registered with the PCAOB and to adhere to all PCAOB rules and standards in those audits. PCAOB R. 2100 & 3100. In 2003, the PCAOB adopted the then-existing SAS as its interim auditing standards. PCAOB R. 3200-T.

years in the period ended December 31, 1999. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audits to obtain reasonable assurances about whether the financial statements are free from material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated financial position of Daw Technologies, Inc. and Subsidiaries as of December 31, 1999 and 1998, and the consolidated results of their operations and their consolidated cash flows for each of the three years in the period ended December 31, 1999, in conformity with generally accepted accounting principles.

Aplt. App. at 378.

Starting in November 2001 and continuing for several months, Daw made a series of public disclosures regarding its 1999 financial statements. In essence, the disclosures informed investors that the 1999 financial statements would be restated due to accounting problems Daw had discovered with its European operations. The disclosures precipitated a downward trend in the price of Daw's stock. Daw's stock was ultimately de-listed from the NASDAQ due to Daw's failure to file its 10-Q quarterly disclosure, which was the result of its inability to effect a timely restatement of the 1999 financial statements. Daw's stock price

plummeted further. On April 24, 2002, Daw filed several Form 10-K/As with the SEC, which included copies of its restated 1999 financial statements and December 31, 2000 financial statements.

On April 18, 2003, Investors filed suit, asserting a claim against Grant Thornton under Section 18(a) and various other claims against Daw directors. As to Grant Thornton, Investors alleged that the 1999 financial statements do not present Daw's financial position fairly in conformity with generally accepted accounting principles (GAAP) and that Grant Thornton therefore made a materially false and misleading statement when it opined that they did.

On June 9, 2003, pursuant to Fed. R. Civ. P. 12(b)(6), Grant Thornton filed a motion to dismiss, raising two grounds for dismissal: (1) Investors' Section 18(a) claim was not pled with the specificity required by the PSLRA and Rule 9(b); and (2) Investors' claim was time barred by the one-year limitation period set forth in Section 18(c). The motion was denied. During a subsequent hearing a few months later, the district court reconsidered its prior ruling and granted Grant Thornton's motion but also granted Investors leave to amend their complaint. On January 20, 2004, Investors filed the second amended complaint ("SAC").

Grant Thornton moved to dismiss the SAC on the grounds that Investors had not cured the pleading deficiencies in their original Section 18(a) claim and that the statute of limitation barred it in any event. After a hearing held on

September 30, 2004, the district court granted the motion, dismissing Investors' claim with prejudice. This appeal followed.

## **Discussion**

Investors advance two arguments on appeal. They contend the district court erred in holding that (1) they failed to plead, with the requisite level of particularity required by the PSLRA, all the elements of a Section 18(a) claim, and (2) the statute of limitation set forth in Section 18(c) barred their claim.

*I. Section 18(a) and the PSLRA*

We review de novo a district court's dismissal of a complaint for failure to plead a claim with specificity. See Pirraglia v. Novell, Inc., 339 F.3d 1182, 1187 (10th Cir. 2003). In so doing, we apply the same standards as the district court. That is, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. Id.

To succeed under a Section 18(a) claim, a plaintiff is required to plead and prove (1) the defendant made or caused to be made a statement of material fact that was false or misleading at the time and in light of the circumstances under which it was made, (2) the statement was contained in a document filed pursuant to the Exchange Act or any rule or regulation thereunder, (3) reliance on the false

statement, and (4) resulting loss to the plaintiff. See 15 U.S.C. § 78r(a);[2] see also

In re Stone & Webster Sec. Litig., 414 F.3d 187, 193 (1st Cir. 2005).

In dismissing Investors' Section 18(a) claim, the district court focused on the first element. It determined that, pursuant to the PSLRA, Investors were required to plead facts giving rise to a strong inference that Grant Thornton made the alleged false or misleading statements with scienter. It explained in relevant part that:

> An action under Section 18(a) must [] comply with the provisions of the PSLRA which requires, in pertinent part, that a complaint 'shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' 15 U.S.C. § 78u(b)(2). . . . [Investors] and [Grant Thornton] [] disagree on whether scienter must be alleged to state a Section 18(a) claim. The court previously ruled in support of [Grant Thornton's] position and consistent with language in Musick, Peeler & Garrett v. Employers Ins. of Wausau, 508 U.S. 286 (1993). As stated by this court in its bench ruling at the conclusion of the hearing on December 16, 2003,

---

[2] 15 U.S.C. § 78r(a) states in pertinent part:

Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

> the Supreme Court in Musick compared Section 18 to Section 10(b)
> and stated '[all] three causes of action [§§ 9, 18, and 10(b)] . . .
> involve defendants who have violated the securities laws with
> scienter.' Id. at 296. Plaintiffs have not convinced the court that its
> prior ruling was wrong.

Aplt. App. at 434-35, 437-38. The district court in turn held that the SAC failed to meet this standard.

Investors contend that the district court erred in holding that a claim under Section 18(a) requires them to plead scienter. We agree. The district court's reliance on Musick, Peeler & Garrett v. Employers Ins. of Wausau, 508 U.S. 286 (1993) in support of its holding is misplaced. The state of mind with which the defendant acted enters the case as a defense, i.e., to avoid liability under Section 18(a), the *defendant must prove* that he acted in good faith and did not know that the statement at issue was false or misleading. See 15 U.S.C. § 78r(a); In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 283 (3rd Cir. 2006); Stone & Webster, 414 F.3d at 193; Manga Inv. v. John Does, 931 F.2d 38, 39 (11th Cir. 1991).

But our inquiry does not end there. Because "the legal sufficiency of a complaint is a question of law, we may affirm the district court's dismissal order if we independently determine that [Investor's] failed to state a claim." Issa v. Comp USA, 354 F.3d 1174, 1178 (10th Cir. 2003) (internal quotations, citations, and alterations omitted). As such, we now undertake our own determination of whether the factual allegations contained in the SAC were adequate to state a

claim under Section 18(a), considering the pleading requirements of the PSLRA.

We start by noting that the PSLRA certainly bears on the particularity with which a plaintiff is required to plead a Section 18(a) claim. As noted, to survive a motion to dismiss such a claim, a plaintiff is required to plead that the defendant made or caused to be made a statement of material fact that was false or misleading at the time and in light of the circumstances under which it was made. See 15 U.S.C. § 78r(a).[3] As to whether a statement is false or misleading, the PSLRA's pleading requirements are three-fold. It requires the complaint to specify (1) each statement alleged to have been misleading, (2) the reason why the statement is misleading, and (3) if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. Id. § 78u-4(b)(1); Stone & Webster, 414 F.3d at 194, 214-15 (referring to these standards as the "clarity-and-basis requirements).[4] Throughout this opinion, we will refer to this provision of §

---

[3] Investors contend the remaining elements of their Section 18(a) claim are sufficiently pled. See Aplt. Br. at 28. Grant Thornton does not challenge Investors in that regard, and we assume, without deciding, that they are satisfied.

[4] 15 U.S.C. § 78u-4(b)(1) states:

In any private action arising under this chapter in which the plaintiff alleges that the defendant—

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were

78u-4(b)(1) as the PSLRA's "statement-reason-and-basis" requirements.

Investors argue that the SAC easily satisfies these standards. Investors start with the supposition that when an auditor "certifies" a company's financial statements, which subsequently prove to contain a materially false or misleading statement, the auditor's certification is itself a false and misleading statement within the meaning of Section 18(a). Following that line of reasoning, they contend they fulfilled the statement requirement when they set forth in the SAC Grant Thornton's opinion that the 1999 financial statements present Daw's financial position fairly in conformity with GAAP. They maintain that they satisfied the reason requirement when they specified how the 1999 financial statements were not so presented. And they urge they fulfilled the basis requirement by, for example, identifying the GAAP standard applicable to a certain portion of the 1999 financials statements and showing how it was violated. In support of their contention, Investors refer us to <u>Stone & Webster</u>, wherein the First Circuit allowed a class of investor-plaintiffs—employing a functionally similar method of pleading—to proceed against a company's auditor under

made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

Section 18(a).  See 414 F.3d at 198-99, 213-14.

We find Investors' position unpersuasive and must respectfully disagree with the First Circuit to the extent its holding in Stone & Webster lends support thereto.[5]  Central to that holding is our determination that Investors rest their pleading theory on a supposition that impermissibly reads certain portions—i.e., statements—from Grant Thornton's audit report outside the context of their concomitant parts.

We recognize that an accountant who audits a public company's financial

---

[5]  In Stone & Webster, the First Circuit confronted a myriad of Exchange Act claims lodged by a class of investor-plaintiffs against multiple defendants, including two of the company's officers/directors and its independent auditor. The court's thorough opinion occupies some 25 reported pages, but it dedicates only a few short paragraphs to the Section 18(a) claim lodged against the auditor. In its brief disposition on that claim, the court reasoned that the allegations supporting investor-plaintiff's Section 18(a) claim against the auditor satisfied the PSLRA's pleading requirements.  See 414 F.3d at 214.  It did so because the allegations were "substantially the same" as the allegations directed at the two company officers/directors, which the court previously determined satisfied the PSLRA's pleading requirements.  Id.  As against the two company officers/directors, the court found satisfactory the relevant complaint's allegations that the company's financial statements contained material GAAP violations and were therefore false and misleading.

The Stone & Webster court did not—for whatever reason—undertake an analysis regarding the specific relationship auditors have with a company's financial statements.  Nor did it analyze whether an auditor's report is of such a character that material GAAP violations in the company's financial statements renders the auditor's report a false or misleading statement within the meaning of Section 18(a).  That analysis, of course, bears on whether merely alleging GAAP violations in a company's financial statements is sufficient to pass the statement-reason-and-basis requirements with respect to a Section 18(a) claim brought against the auditor.  Squarely confronted with those issue here, we find a more nuanced analysis appropriate.

statements has what the Supreme Court has emphasized is a special "*public*

responsibility*.*" United States v. Arthur Young & Co., 465 U.S. 805, 817 (1984)

(emphasis in original).  And in view of the great reliance investors place on

financial statements, it is almost axiomatic that an auditor's independent scrutiny

plays a necessary role in ensuring that the integrity of the securities markets will

be preserved.  See id. at 819; see also Touche Ross & Co. v. S.E.C., 609 F.2d

570, 581 (2d Cir. 1979) ("Breaches of professional responsibility jeopardize the

achievement of the objectives of the securities laws and can inflict great damage

on public investors . . . In our complex society the accountant's certificate and the

lawyer's opinion can be instruments for inflicting pecuniary loss more potent than

the chisel or the crowbar." (internal quotations and citations omitted)).

But auditors do not "certify"[6] a company's financial statements in the sense

that they "guarantee" or "insure" them.  See AICPA, AU § 230.13; see also

ALVIN A. ARENS, RANDAL J. ELDER & MARK S. BEASLEY, AUDITING AND

ASSURANCE SERVICES, AN INTEGRATED APPROACH 47 (11th ed. 2006) (hereinafter

---

[6] Under Section 11 of the Securities Act of 1933 (Securities Act), 15
U.S.C. § 77k, those purchasing securities pursuant to a registration statement
containing an untrue statement of a material fact or omitting a material fact may
sue "every *accountant* . . . who has with his consent been named as having
prepared or *certified* any part of the registration statement, or as having prepared
or *certified* any report or valuation which is used in connection with the
registration statement, with respect to the statement in such registration statement,
report, or valuation, which purports to have been prepared or *certified* by him."
(Emphasis added).  Section 18(a) does not, however, impose liability on auditors
(or accountants) in a parallel manner; rather, it extends liability to those who
make or cause to be made materially false or misleading statements.

"ARENS"); <u>S.E.C. v. Arthur Young & Co.</u>, 590 F.2d 785, 788-89 (9th Cir. 1979).

Nor do they, by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein. Rather, the end product of an audit is the audit report, which usually contains three concomitant paragraphs: the introduction, the scope and the opinion. A brief overview of these paragraphs, namely the first two, elucidates the relevant context in which Grant Thornton rendered its unqualified opinion—the statement Investors contend gives rise to Section 18(a) liability.

In the "introductory" paragraph of the audit report, Grant Thornton explained that an audit—as opposed to another form of assurance services, e.g., a review or compilation—was performed, identified the financial statements that were audited, and remarked that those statements are the responsibility of management. <u>See</u> Aplt. App. at 378; AICPA, AU §§ 508.07(b) and (c). Important for the purposes of our discussion, Grant Thornton also stated that "[its] responsibility is to express an opinion on these financial statements *based on [its] audits*." Aplt. App. at 378 (emphasis added); <u>see</u> AICPA, AU § 508.07(c).

Next, in the "scope" paragraph Grant Thornton made a factual statement about what it did in the audits. ARENS at 46. Specifically, Grant Thornton stated that it conducted its audits in accordance with GAAS. <u>See</u> Aplt. App. at 378; AICPA, AU § 508.07(d). It further represented that it planned and performed its

audits to obtain reasonable assurance about whether the 1999 financial statements were free from material misstatements.  See Aplt. App. at 378; AICPA, AU § 508.07(e).  The use of the term "reasonable" connotes that an audit cannot be expected to completely eliminate the possibility that a material misstatement will exist in the financial statements.  See AICPA, AU § 230.10 ("Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud.").  In addition, Grant Thornton stated that "[it] believe[s] that *[its] audits provide a reasonable basis for [its] opinion*."  Aplt. App. at 378 (emphasis added); see AICPA, AU § 508.07(g).

Last, in the "opinion" paragraph Grant Thornton stated its conclusions with regards to Daw's 1999 financial statements, which were based on the audits it purportedly performed in conformity with GAAS:

> In our opinion, the financial statements [] present fairly, in all material respects, the consolidated financial position of Daw Technologies, Inc. and Subsidiaries as of December 31, 1999 and 1998, and the consolidated results of their operations and their consolidated cash flows for each of the three years in the period ended December 31, 1999, in conformity with generally accepted accounting principles.

Aplt. App. at 378.[7]

_____

[7] In contrast to the unqualified opinion given by Grant Thornton, an auditor generally may give a qualified opinion, adverse opinion or a disclaimer of opinion.  See AICPA, AU § 508.10.  A qualified opinion states that the company's financial statements are fairly presented except for, or subject to, a departure from GAAP, a change in accounting principles, or a material uncertainty.  Id.  An adverse opinion is a reflection of the auditor's determination that the company's financial statements do not fairly present the financial

The opinion paragraph, as the term suggests, is stated as an opinion of Grant Thornton rather than a statement of absolute fact or a guarantee. See ARENS at 47; but see Bily v. Arthur Young & Co., et al., 834 P.2d 745, 768 (Cal. 1992) (finding auditor's opinion a representation of fact in the negligent misrepresentation context actionable by client). Moreover, the phrase "in our opinion" indicates that there may be some information risk associated with the 1999 financial statements, even though the statements have been audited. ARENS at 47.

Investors conveniently attempt to read Grant Thornton's opinion that the 1999 financial statements present Daw's financial position fairly in conformity with GAAP as an isolated statement of material fact. That is, Investors attempt to characterize it as a categorical statement separate from its stated basis. The audit report does not, however, allow for such a cropped reading. To the contrary, the audit report must be read in its entirety. When so read, it is readily apparent that the introductory paragraph tethers Grant Thornton's opinion to its stated basis: Grant Thornton's factual assertion that its audits were performed in accordance with GAAS and therefore provide an adequate basis for its opinion. It is against

position, results of operations, or changes in financial position of the company in conformity with GAAP; that is, an adverse opinion is issued when the auditor determines that the company has materially misstated certain items on its financial statements. Id. Finally, a disclaimer of opinion expresses the auditor's inability to draw a conclusion. A disclaimer of opinion is generally issued when the auditor lacks sufficient information about the financial records to issue an overall opinion. Id.

this backdrop that we must assess whether the SAC satisfies the PSLRA's statement-reason-and-basis requirements.

Assuming *arguendo* that the SAC satisfies the statement requirement by specifying Grant Thornton's opinion as a false and misleading statement, it fails as to the reason requirement. Because Grant Thornton's opinion is couched in terms of a stated basis, a claim that the former is false or misleading must necessarily specify the reason or reasons why in terms of the latter. Such a showing would, for example, specify how (1) Grant Thornton did not actually form its opinion regarding the 1999 financial statements based on its audits; or (2) it did not have a reasonable basis for its opinion because it did not plan and perform its audits of the 1999 financial statements in accordance with GAAS. We of course recognize that in assessing a motion to dismiss for insufficient pleading, we must read the SAC in the manner most favorable to Investors and draw reasonable inferences in their favor. Pirraglia, 339 F.3d at 1188. But our review of the SAC reveals that Investors made no attempt to specify the reason or reasons why Grant Thornton's opinion was false or misleading in relation to the audits it performed.[8] Simply alleging, as Investors do, that GAAP violations in 1999 financial statements rendered Grant Thornton's opinion materially false or

---

[8] Our conclusion in this regard is buttressed by Investors' acknowledgment at oral argument that they did not plead Grant Thornton violated GAAS.

misleading is inadequate.[9] Cf. 17 C.F.R. § 210.4-01(a)(1) ("*Financial statements filed with the* [Securities and Exchange Commission (SEC)] *which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate, despite footnote or other disclosures, unless the* [SEC] *has otherwise provided.*") (emphasis added).

Investors argue that to require a showing that Grant Thornton did not form its opinion based on its audits—the first example given—would impermissibly

---

[9] Perhaps the larger the GAAP violation in a company's financial statements, the more likely it might be that such a violation could not be accomplished without either the auditor consciously disregarding the results of its audit or a failure on the auditor's part to conduct its audit in conformity with GAAS. The SAC, however, contains no factual allegation that the alleged GAAP violations here were the result of Grant Thornton's conduct under either potentially actionable grounds. Nor do Investors suggest that it does.

Instead, in addition to Stone & Webster, Investors cite to several district court cases to show that "courts uniformly hold that when an auditor gives an unqualified opinion approving inaccurate financial statements, the auditor has made false and misleading statements that could subject the auditor to liability." Aplt. Reply Br. at 12, 13 n. 6 (citing In re Hayes Lemmerz Intern., Inc., 271 F. Supp. 2d 1007 (E.D. Mich. 2003); In re Sunterra Corp. Sec. Litig., 199 F. Supp. 2d 1308 (M.D. Fla. 2002); Holmes v. Baker, 166 F. Supp. 2d 1362 (S.D. Fla. 2001); P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F. Supp. 2d 589 (D. N.J. 2001); and Chu v. Sabratek Corp., 100 F. Supp. 2d 815 (N.D. Ill. 2000)). One of these cases, Hayes Lemmerz, addresses an auditor's liability in the Section 18(a) context and another, Chu, does so in the 10(b) context. Both ostensibly support Investors' position in the same conclusory way as Stone & Webster, and we therefore reject them for the reasons previously discussed. The remaining cases are not as broad as Investors' contend. In each, the relevant complaint alleged more than just GAAP violations in the company's financial statements; it alleged GAAS violations on behalf of the auditors as well. See Sunterra, 199 F. Supp. 2d at 1332-38 (in Section 10(b) claim against company's independent auditors, plaintiff alleged both GAAP violations in the financial statements and GAAS violations on behalf of the auditors); Holmes, 166 F. Supp. 2d at 1375-76 (same); P. Schoenfeld, 142 F. Supp. 2d at 609-10 (same).

inject a scienter element into Section 18(a). To be sure, Section 18(a) has no scienter requirement. See 15 U.S.C. § 78r(a); In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d at 283; Stone & Webster, 414 F.3d at 193; Manga Inv., 931 F.2d at 39. But it is no answer to argue that the lack of a scienter requirement in Section 18(a) excuses Investors' failure to sufficiently specify the reasons why Grant Thornton's opinion was false or misleading in the context of its stated basis. See 15 U.S.C. § 78u-4(b)(1).

Investors also make much of the distinction between "false" and "misleading" statements. They argue that "[l]iability under section 18 is not limited to statements that are technically 'false'; rather, liability extends to all statements that are 'misleading with respect to any material fact.'" Aplt. Reply Br. at 14. To the extent there is a quantifiable difference between the two terms, we are unmoved by Investors argument because it does nothing to alter our conclusion that they failed to adequately specify the reason or reasons why Grant Thornton's audit opinion was misleading.

Investors further argue that the SAC contains sufficient allegations that Grant Thornton "*caused* to be made" the allegedly false and misleading statements contained in 1999 financial statements by aiding in their preparation and providing them with an unqualified opinion as required by 15 U.S.C. § 78m(a)(2). Aplt. Reply Br. at 7-9 (emphasis added). Investors cite no relevant authority in support of their contention, and we are unpersuaded by it in light of

- 18 -

our analysis regarding the relationship auditors have with a company's financial statements.

Because we find that Investors failed to adequately plead their Section 18(a) claim, we affirm on that ground. We express no opinion as to the limitations issue.

**AFFIRMED.**