[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 30, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-10163

_____

D. C. Docket No. 98-2168-CIV-T-17E

GEORGE EHLERT, as joint tenants on
behalf of themselves and all others
similarly situated, GEORGEANNE EHLERT,
as joint tenants on behalf of themselves and
all others similarly situated, et al.,

Plaintiffs-Appellants-
Cross-Appellees,

versus

MICHAEL SINGER, JOHN H. KANG, et al.,

Defendants-Appellees-
Cross-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(March 30, 2001)**

Before ANDERSON, Chief Judge, and MARCUS and KRAVITCH, Circuit Judges.

ANDERSON, Chief Judge:

This is an appeal from a district court order dismissing Plaintiffs' claims under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933. For the reasons stated below, we affirm the district court's dismissal of the complaint under Fed. R. Civ. P. 12(b)(6) but remand so that the district court can make the Rule 11 findings required under the Private Securities Litigation Reform Act ("PSLRA").

## I. BACKGROUND

According to the complaint, Medical Manager Corporation ("MMC") is a leading provider of computer management systems to the health-care industry. It derives most of its revenue from sales of its "core product," known as the Medical Manager, a practice management system. In 1994 MMC began selling its software system known as "Version 8" of the Medical Manager. MMC became a publicly traded company through an initial public offering in February 1997. In 1997 it released "Version 9" of the Medical Manager, which was the first version to be Year 2000 compliant.

On April 23, 1998, MMC conducted a secondary public offering of MMC securities, in which 2.5 million shares of its common stock were offered for sale at a price of $30 per share. MMC sold 1.5 million shares, and Michael Singer, Chairman of the Board of Directors, President, and CEO of MMC, and Richard

Mehrlich, a director of MMC, each sold 500,000 shares. Donaldson, Lufkin & Jenrette Securities Corporation, Morgan Stanley & Co, Inc., Smith Barney, Inc., and Raymond James & Associates, Inc., (collectively, the "Underwriter Defendants"), purchased all 2.5 million shares and resold them to the public.

On August 5, 1998, it became public knowledge that a MMC customer had filed a class action against MMC (the "Courtney lawsuit") based upon MMC's refusal to provide free upgrade services to its Version 8 product in order to make it Year 2000 compliant. Following this disclosure, the price of MMC's common stock dropped from $26.75 per share to $20.375 per share by the close of trading on August 5, 1998. On August 31, 1998, MMC issued a statement that is was "no longer enhancing, updating or maintaining versions prior to Version 9" and that it would "make no representations with respect thereto, including those concerning the current or future ability of Version 8 or prior versions to handle industry and regulatory requirements."

Plaintiffs, George and Georgeanne Ehlert, who purchased shares of MMC common stock on or about April 24, 1998, at $30 per share, brought this securities class action against MMC, MMC officers and directors (the "Individual Defendants"), and the Underwriter Defendants on behalf of themselves and all

3

similarly situated purchasers of MMC common stock during the class period.[1] In their amended complaint, Plaintiffs alleged that Defendants' issuance of materially false and misleading statements and omissions in the prospectus and registration statement, issued as part of the secondary public offering, caused the class to purchase the stock at artificially inflated prices.

The district court dismissed the complaint under Rule 12(b)(6) because the court concluded that the alleged misstatements were forward-looking statements that were protected under the PSLRA safe-harbor provision due to the existence of adequate cautionary language. Plaintiffs appeal the dismissal of their §§ 11, 12(a)(2), and 15 claims. On cross-appeal, MMC and the Individual Defendants argue that the district court erred in failing to make the Rule 11 findings required under the PSLRA.

We review the dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) <u>de novo</u>. <u>See</u> <u>Harris v. Ivax Corp.</u>, 182 F.3d 799, 802 (11th Cir. 1999). All well-pleaded facts are accepted as true, and all reasonable inferences drawn therefrom are construed in the light most favorable to the plaintiff. <u>See</u> <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

---

[1] The class period commenced on April 23, 1998, and extended through August 5, 1998.

4

## II. DISCUSSION

*A. Alleged Securities Violations*

The crux of Plaintiffs' complaint is that the prospectus, which was filed as part of MMC's registration statement, was materially false and misleading because it failed to warn investors that, at the time the prospectus was issued, Version 8 was no longer being enhanced or upgraded and would be rendered obsolete by Version 9.

Section 11 of the Securities Act creates a private cause of action where a registration statement either "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. A § 11 claim can be brought against the issuer of the securities, the issuer's directors or partners, the underwriters of the offering, and accountants who are named as having prepared or certified the registration statement. See 15 U.S.C. § 77k(a).

Section 12(a)(2) of the Securities Act creates a private cause of action against persons who offer or sell a security "which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77l(a)(2). Section 12 liability extends to those who

5

transfer title to the security and to those who successfully solicit the purchase. See

Pinter v. Dahl, 486 U.S. 622, 642-46, 108 S. Ct. 2063, 2075-78 (1988).

Thus, in order to state a claim under §§ 11 and 12, Plaintiffs must allege that there was a material misrepresentation or omission. In their amended complaint, Plaintiffs point to two statements in a section of the prospectus entitled "Risks Related to Technological Change and New Product Development," which they allege were materially misleading.[2] The first allegedly misleading statement was that "[t]he Company's future success will depend, in part, upon its ability to enhance its current products, to respond effectively to technological changes, to sell additional products to its existing client base and to introduce new products and technologies that address the increasingly sophisticated needs of its clients." The second allegedly misleading statement was that "[t]he Company is devoting significant resources to the development of enhancements to its existing products and the migration of existing products to new software platforms." Plaintiffs allege that these two statements were materially misleading "absent any statement by the defendants that the Company would not provide Year 2000 compliant software upgrades to the Company's mainstay product, the Version 8 system, and that MMC

_____

[2] Other allegations in the amended complaint were abandoned either explicitly by Plaintiffs in their reply brief to this Court or implicitly by Plaintiffs' failure to present the allegations to the district court as a basis for liability or their failure to raise the allegations in their initial brief to this Court.

6

was curtailing its services to this product line." Plaintiffs further allege that "[n]o disclosure was made in the Prospectus that defendants were rendering its core product obsolete by the introduction of the Company's Version 9 system," and there was no disclosure of "the adverse consequences which would result from such action."

The PSLRA provides a safe-harbor from liability for certain "forward-looking" statements. See 15 U.S.C. § 77z-2.[3] The threshold question is whether the section of the prospectus at issue in this case constitutes a forward-looking

---

[3] The term "forward-looking statement" means–
(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

15 U.S.C. §77z-2(i).

statement subject to the PSLRA safe-harbor.  For the reasons stated below, we

conclude that it does.

In order to determine whether the statements in the prospectus fall within the

safe-harbor, we must first examine the text of the prospectus.[4]  The paragraph of

the prospectus which Plaintiffs quote in their amended complaint states in full:

> Risks Related to Technological Change and New Product
> Development: The market for the Company's products is
> characterized by rapid change and technological advances requiring
> ongoing expenditures for research and development and the timely
> introduction of new products and enhancements of existing products.
> The Company's future success will depend, in part, upon its ability to
> enhance its current products, to respond effectively to technological
> changes, to sell additional products to its existing client base and to
> introduce new products and technologies that address the increasingly
> sophisticated needs of its clients.  The Company is devoting
> significant resources to the development of enhancements to its
> existing products and the migration of existing products to new
> software platforms.  There can be no assurance that the Company will
> successfully complete the development of new products or that the
> Company's current or future products will satisfy the needs of the
> market for practice management systems.  Further, there can be no
> assurance that products or technologies developed by others will not
> adversely affect the Company's competitive position or render its
> products or technologies noncompetitive or obsolete.

Plaintiffs argue that the PSLRA safe-harbor does not apply because the

statements at issue "relate to current information" and thus they are not "forward-

---

[4] As the document is central to the complaint, and its contents are not in dispute, the text of the prospectus is properly considered by this Court.  See Harris, 182 F.3d at 802 n.2.  See also Bryant, 187 F.3d at 1276 (approving the practice of "judicially noticing relevant documents legally required by and publicly filed with the SEC at the motion to dismiss stage").

8

looking." Specifically, Plaintiffs allege that MMC discontinued all services and upgrades to its Version 8 product in November 1997 with the introduction of its Version 9 product and that this was "hard information" when the prospectus was issued in April 1998.

In Harris, this Court held that an entire section of a prospectus may qualify as a forward-looking statement even though it contains a statement of current conditions. See 182 F.3d at 806-07. Furthermore, "a material and misleading omission can fall within the forward-looking safe-harbor." Id. at 806. In Harris, at issue was a press release that contained a list of factors relating to Ivax's generic drug business that would influence its third quarter results. See id. at 805. The list contained some statements that were forward-looking and some statements of present fact. Thus, one of the questions faced by this Court was whether the safe-harbor benefitted the entire statement or only parts of it. See id. at 806. This Court stated:

> Of course, if any of the individual sentences describing known facts . . . were allegedly false, we could easily conclude that that smaller, non-forward-looking statement falls outside the safe-harbor. But the allegation here is that the list *as a whole* misleads anyone reading it for an explanation of Ivax's projections, because the list omits the expectation of a goodwill writedown. If the allegation is that the whole list is misleading, then it makes no sense to slice the list into separate sentences. Rather, the list becomes a "statement," in the statutory sense, and a basis of liability, as a unit. It must therefore be either forward-looking or not forward-looking in its entirety.

Id. at 806.  The Court held that "when the factors underlying a projection or economic forecast include both assumptions and statements of known fact, and a plaintiff alleges that a material factor is missing, the entire list of factors is treated as a forward-looking statement."  Id. at 807.

Similar to the plaintiffs in Harris, Plaintiffs in this case allege that the section of the prospectus at issue here is materially misleading absent a statement that MMC would not provide free Year 2000 compliant upgrades to Version 8 customers and absent a statement that it was curtailing its services to Version 8. Plaintiffs do not allege that the statement in the prospectus that MMC's "future success will depend, in part, upon its ability to enhance its products" is false.  Nor do they argue that MMC was no longer "devoting significant resources to the development of enhancements" to its Version 9 product, which was "an existing product" at the time the prospectus was issued.  Because the allegation is that this section of the prospectus is misleading, due to material omissions, we view the section as a whole and determine whether it is forward-looking.  See Harris, 182 F.3d at 806.

The section of the prospectus at issue is entitled "Risks Related to Technological Change and New Product Development."  It discusses MMC's "future success" and risk-factors that might affect that success.  It is "a statement

10

of future economic performance," as well as "a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer." 15 U.S.C. § 77z-2(i)(1). Viewing the section of the prospectus as a whole, we conclude that it is a forward-looking statement. See Harris, 182 F.3d at 807.[5]

After having determined that the statement is forward-looking, and thus that the safe-harbor provision applies, the next step in the analysis is to determine whether the statement is protected by the safe-harbor. See 15 U.S.C. § 77z-2. One way in which a forward-looking statement can be protected is for it to be "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 77z-2(c)(1)(A)(i).

In the section of the prospectus quoted above, MMC informed investors that "[t]he market for the Company's products is characterized by rapid change and technological advances requiring ongoing expenditures for research and development and the timely introduction of new products and enhancements of existing products." MMC also warned investors that "[t]here can be no assurance

---

[5] We also note that the individual statement that "[t]he Company is devoting significant resources to the development of enhancements to its existing products" is itself a statement that has "forward-looking" connotations. The fact that it is a present tense statement does not render it non-forward-looking. See Harris, 182 F.3d at 805.

that the Company will successfully complete the development of new products or that the Company's current or future products will satisfy the needs of the market for practice management systems."

Plaintiffs' primary claim is that the challenged statements were misleading because MMC failed to warn investors that MMC had decided not to provide free upgrades to Version 8 to make it Year 2000 compliant. We conclude that Plaintiffs' claim is without merit, because the challenged statements were forward-looking and were accompanied by meaningful cautionary statements. The following excerpts from the prospectus demonstrate that the forward-looking statement was accompanied by meaningful cautionary language:

> **Risk of Product-Related Claims** Certain of the company's products provide applications that relate to financial records, patient medical records and treatment plans. Any failure of the Company's products to provide accurate, confidential and timely information, including failures which may be traceable to the Year 2000 issue, could result in product liability or breach of contract claims against the Company by its clients, their patients or others . . . There can be no assurance that the Company will not be subject to product liability or breach of contract claims . . . .

> **Year 2000 Compliance** The Year 2000 issue relates to whether computer systems will properly recognize and process information relating to dates in and after the year 2000. These systems could fail or produce erroneous results if they cannot adequately process dates beyond the year 1999 and are not corrected. Significant

12

uncertainty exists in the software industry concerning the potential consequences that may result from failure of software to adequately address the Year 2000 issue.

**Proprietary (External) Software** The Year 2000 issue also creates risk for the Company from problems that may be experienced by customers of its software. While the Company believes that Version 9 of The Medical Manager practice management system, which was commercially released in November 1997, is Year 2000 compliant, prior versions of the system are not. The Company has encouraged users of pre-Version 9 versions of the Medical Manager software to upgrade to Version 9 in order to become Year 2000 compliant. If these or other customers experience significant difficulties as a result of the Year 2000 issue, or if the Company encounters difficulties in responding in a timely manner to customer requests to upgrade to Version 9, there could be a material adverse impact on the Company's results of operations, financial condition or business.

We conclude that there was meaningful cautionary language in the prospectus to put investors on notice that Version 8 was not Year 2000 compliant and that Version 8 users needed to purchase Version 9 in order to have a Year 2000 compliant Medical Manager program. Investors were also warned that: non-Year 2000 compliant software, such as Version 8, could "fail or produce erroneous results;" that "difficulties . . . [with respect to] customer requests to upgrade to Version 9 . . . could [have] a material adverse impact on the Company's . . . operations, financial condition or business;" and that "failures . . . traceable to the Year 2000 issue could result in product liability or breach of contract claims

13

against the Company." Given the statement in the prospectus that MMC "encouraged users of pre-Version 9 versions of the Medical Manager software to upgrade to Version 9 in order to become Year 2000 compliant," and absent any allegation that it was the industry-wide norm for companies to provide free support and upgrade services to non-Year 2000 compliant software, we conclude that there was meaningful cautionary language to warn investors that there were risks to MMC's existing products created by the Year 2000 problem and that MMC would not provide free Year 2000 compliant upgrades to Version 8 users.

Plaintiffs also argue that the cautionary language in the prospectus is insufficient because it fails to address the consequences of MMC's discontinuance of its services to Version 8 customers, i.e., that Version 8 users would need to purchase Version 9. We disagree.[6] The PSLRA safe-harbor requires only that the cautionary language mention "important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 77z-

---

[6] Although we conclude in the text, <u>infra</u>, that the cautionary language is not insufficient for failure specifically to mention the alleged discontinuance of service for Version 8, we also note that it is clear from the complaint, and the briefs in both the district court and on appeal, that this case is primarily about MMC's decision not to provide free upgrades to Version 8 to make the Version 8 software Year 2000 compliant. Moreover, we note that the alleged discontinuance of service for Version 8 would in any event probably be a moot point, because Plaintiffs conceded in paragraph 37 of the complaint that MMC's decision to provide upgrades to Version 8 only by means of the acquisition of Version 9 rendered Version 8 obsolete. Finally, we note that the only damages alleged in this case are those stemming directly and solely from MMC's decision "to simply disregard the year 2000 defect in its Version 8 product," Complaint ¶ 6, and the revelation thereof as a result of the <u>Courtney</u> lawsuit.

2(c).  It does not require that the prospectus list all factors that might influence the company's financial future.  See Harris, 182 F.3d at 807.  As this Court held in Harris, "[M]ust the cautionary language explicitly mention *the* factor that ultimately belies a forward-looking statement?  We think not. . . . [W]hen an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward."  Id.  In this case, the warnings actually given were not only of a similar significance to the risks actually realized, but were also closely related to the specific warning which Plaintiffs assert should have been given.  Because we conclude that adequate cautionary language accompanies the forward-looking statement, we hold that Defendants are protected from liability under the safe-harbor.

Thus, the district court properly dismissed Plaintiffs' §§ 11 and 12 claims against Defendants.  See 15 U.S.C. § 77z-2(c)(1).  Because Plaintiffs have failed to establish a primary violation under §§ 11 or 12, their § 15 claim also fails.  Section 15 of the Securities Act of 1933 imposes joint and several liability upon controlling persons for acts committed by those under their control that violate §§ 11 and 12.  See 15 U.S.C. § 77o.  To make out a prima facie case of a § 15 violation, Plaintiffs must prove that Defendants "(1) each had power or influence over the controlled

person and (2) each induced or participated in the alleged violation." Dennis v.

General Imaging, Inc., 918 F.2d 496, 509 (5th Cir. 1990). Because we hold that

Plaintiffs have failed to state a claim of a securities violation under §§ 11 and 12,

they have also failed to state a claim under § 15. See id. (holding that none of the

defendants could be liable under § 15 "since there [were] no actual violators of the

securities laws to be held liable with").


*B. Cross-Appeal*

On cross-appeal, Defendants argue that the district court erred in failing to

make Rule 11 findings expressly required by the PSLRA. We agree. The

applicable PSLRA provision states:

> In any private action arising under this subchapter, upon final
> adjudication of the action, the court shall include in the record specific
> findings regarding compliance by each party and each attorney
> representing any party with each requirement of Rule 11(b) of the
> Federal Rules of Civil Procedure as to any complaint, responsive
> pleading, or dispositive motion.

15 U.S.C. § 77z-1(c)(1). Because the district court did not make the necessary
Rule

11 findings, we remand for this purpose.


## III. CONCLUSION

For the reasons stated above, we affirm the district court's dismissal of the

complaint and remand for purposes of making the Rule 11 findings.

AFFIRMED and REMANDED.