Scott SCHULTZ, individually and on behalf of all others similarly situated, Plaintiff,

v.

APPLICA INCORPORATED, Harry D. Schulman, and Terry L. Polistina, Defendants.

No. 0660149–CIV.

United States District Court, S.D. Florida.

Jan. 17, 2007.

Order Dismissing Complaint in Part Feb. 21, 2007.

David A. Coulson, Glenn Harris, Eliot Pedrosa and Alex Nemiroff of Greenberg Traurig, P.A. in Miami, FL, Counsel of record for the Defendants.

Samuel H. Rudman, David Rosenfeld, and Mario Alba, Jr. of Lerach Coughlin Stoia Geller Rudman & Robbins LLP in Melville, NY, Paul Geller, David George, and Jack Reise of Lerach Coughlin Stoia Geller Rudman & Robbins LLP in Boca Raton, FL, Jack Fruchter of Abraham Fruchter & Twersky LLP in New York, NY, Counsel of record for Plaintiffs.

*ORDER GRANTING, IN PART, MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT*

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the Defendants' Motion to Dismiss Consolidated Class Action Complaint [DE–22]. The Court has carefully considered the Motion, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion [DE–24], Defendants' Reply [DE–25], Defendant's Notice of Supplemental Authority [DE–27], and is otherwise fully advised in the premises.

## I. BACKGROUND

On August 9, 2006, Plaintiff filed a two-count Consolidated Class Action Complaint ("Complaint") alleging that Defendant Applica Incorporated ("Applica"), a corporation in the business of manufacturing, marketing, and distributing small household appliances, and several of its top officers [1] violated federal securities law. In particular, the Plaintiffs allege that the Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b–5 promulgated by the Securities and Exchange Commission ("SEC") under the Exchange Act.

The Complaint alleges that during the class period from November 4, 2004 to April 28, 2005, Applica and its top officers violated the Securities Act by failing to disclose that two products launched in 2004 were not performing as projected and by making materially false and misleading statements, which misrepresented the facts about the products and sales of those products. The Court accepts the following facts alleged in the Complaint as true for the purposes of this Motion to Dismiss. In 2004, Applica launched two new products, the Tide Buzz Ultrasonic Stain Remover ("Tide Buzz") and the Home Café single cup coffee maker ("Home Café"), which were expected to contribute to exceptional growth for Applica. Both products were unsuccessful by the start of the Class Period. Home Café suffered from unresolved product defects, resulting in many customers returning the product to Applica. The Tide Buzz was not meeting internal sales expectations, necessitating a decrease in the sales price to $.99 above production cost.

Plaintiffs allege that throughout the Class Period, Defendants issued positive statements about the Home Café and Tide Buzz which contained material misrepresentations or omissions because they failed to disclose the true facts about the success of the products. Additionally, Plaintiffs allege that Applica's financial filings and press releases were false and misleading because Applica fraudulently or in a severely reckless manner committed viola-

1. The individual Defendants are Harry D. Schulman ("Schulman"), Applica's President and Chief Executive Officer during the class period; Terry L. Polistina ("Polistina"), Applica's Senior Vice President and Chief Financial Officer during the class period; and Michael Michienzi ("Michienzi"), President of Applica's Household Products Division during the class period (collectively the "individual Defendants"). The Court notes that Michienzi is listed as a party in the June 26, 2006 Consolidated Class Action Complaint; he is not listed in the caption of the case. [DE–18]. However, Michienzi has apparently not yet been served in this action.

tions of Generally Acceptable Accounting Principles ("GAAP") and the company's publicly stated policies by improperly recognizing revenue and failing to timely record an impairment in the value of obsolete and unsealable inventory.

Turning to the specifics of Plaintiffs' claims, Plaintiffs allege the following misleading statements or omissions:

— On November 4, 2004, Applica issued a press release announcing its third quarter financial results and stating that the company had experienced an increase in sales for the quarter of "8.2% from the same period the prior year," attributing that increase, in part, to sales of new products. Commenting on Applica's results, Defendant Schulman stated that Applica had gone through significant changes which would have a lasting positive effect on the company and continued changes would create long-term shareholder value. *Id.* ¶ 77.

— On November 4, 2004, during an earnings conference call addressing third quarter financial results, Defendant Michienzi stated the despite a slow start in sales of Home Café the product was experiencing positive sales and that the Tide Buzz "continues to be a product that tests and researches very well." During that call, Defendant Polistina stated that sales of Tide Buzz and the Home Café would "still remain at about $40 million for the year." *Id.* ¶¶ 79–81.

— On November 4, 2004, during the earnings conference call, Defendant Michienzi stated that sales for Home Café were "right on plan" and that Tide Buzz was also "close to plan ... we are still bullish on the product." *Id.* ¶ 82.

— On November 8, 2004, Applica filed its quarterly report with the SEC on Form 10–Q, which was signed by Defendants Shulman and Polistina, which stated that all financial statements contained therein had all adjustments necessary for fair presentation, and represented that Applica "expects sales of Black & Decker branded products to continue to increase for the remainder of the 2004 as the result of sales of several new products, including the Home Café ... and the Tide Buzz." *Id.* ¶ 84.

— On March 14, 2005, Applica issued a press release announcing its financial results for the fourth quarter. Commenting on these results, Defendant Schulman stated that "[w]e are pleased by our strong performance in the fourth quarter ... We expect that our efforts will position us to be profitable in 2005." ¶ 86.

— On March 14, 2005, during an earnings conference call addressing the fourth quarter results for 2004, Defendant Polistina stated that "[a]s for the first quarter we should have sales in the $120 to $125 million range with a loss of $.20 to $2.5 per shares ... Our plans are to build around— are built around making a profit and meeting or hopefully beating our guidance." *Id.* ¶ 88.

— On March 11, 2005, Applica filed its Form 10–K for the year end of 2004 with the SEC. The form was signed by Defendants Schulman and Polistina. *Id.* ¶ 90. In these financial statements, Applica disclosed its policy of accounting for revenue recognition, stating that it recognizes revenue when all contractual obligations have been satisfied and collection of the resulting receivable is reasonably assured, and disclosed its policy for writing down the value of slow-moving and obsolete inventories. *Id.* ¶ 45, 63.

Plaintiffs allege that the foregoing statements, the motive of Applica and certain of its top officers to deceive the investing public by artificially inflating the price of the shares of Applica during the class period and meet its earnings projections, combined with allegations that individual Defendants Schulman, Polistina and Mi-

chienzi had to have known, or were reckless in not knowing, that the statements regarding the success of the Home Café and Tide Buzz were false and misleading, and GAAP violations regarding revenue recognition and inventory write-downs, all add up to sustain a securities fraud case against the Defendants.

The Defendants have moved to dismiss the Complaint described above for failure to state a claim under the Exchange Act. Defendants argue that: (1) Plaintiffs have failed to meet the heightened pleading standard for scienter; (2) any misleading statements are forward-looking statements protected by the safe harbor provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) control-person liability is lacking.

## II. DISCUSSION

### A. Motion to Dismiss Standard

It is long settled that a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero,* 963 F.2d 332, 334–36 (11th Cir.1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)). Taking the Plaintiffs allegations to be true, the Court finds that their Complaint must nevertheless be dismissed, in part, because of a failure to state a claim upon which relief can be granted for portions of Counts III and IV.

"In determining whether to grant a Rule 12(b)(6) motion, the Court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Watson*

*v. Bally Mfg. Corp.,* 844 F.Supp. 1533, 1535 n. 1 (S.D.Fla.1993), *aff'd,* 84 F.3d 438 (11th Cir.1996). When a plaintiff refers to documents in the complaint that are "central to the plaintiff's claims," the Court "may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require the conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). When deciding a motion to dismiss in a securities fraud case the Court "may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC." *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1018 (5th Cir.1996). As such, in the present matter the Court will consider the allegations made in the complaint, those documents attached to or incorporated into the complaint, and matters that can be judicially, noticed including SEC filings.

### B. Section 10(b) and Rule 10b–5 Claim

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5 prohibits making any untrue statement of material fact or omitting any material fact that would render statements misleading in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5. To maintain a fraud action pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b–5 a plaintiff must establish (1) a false statement or omission of material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied,

and (4) that proximately caused the plaintiff's injury. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir.1997). In addition to meeting the above elements, a plaintiff "must plead with particularity, specific facts which give rise to a strong inference that the defendant acted in a severely reckless fashion." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir.1999). The PSLRA also requires that the "complaint shall state with particularity all facts on which" the allegations are formed. 15 U.S.C. § 78u–4(b)(1).

Even if a plaintiff can meet this pleading standard, the PSLRA allows defendants to argue on a motion to dismiss that the statements at issue were "forward-looking statements." 15 U.S.C. § 78u–5(c)(1); *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir.1999). Liability for forward-looking statements may be avoided if such statements are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward looking-statement." 15 U.S.C. § 78u–5(c)(1)(A)(I); *Harris*, 182 F.3d at 803. Even if the forward-looking statement has no accompanying cautionary statement, a plaintiff must demonstrate that the defendant made the statement with "actual knowledge" that it was "false or misleading." 15 U.S.C. § 78u–5(c)(1)(A)(I); *Harris*, 182 F.3d at 803.

In the instant Motion, Defendants argue that Plaintiffs' claims should be dismissed because the Plaintiffs have failed to meet the scienter standard of severe recklessness and any misleading statements are forward-looking statements protected by the safe harbor provisions of the PSLRA.

### 1. Scienter Requirement

The PSLRA requires that a complaint contain particular facts raising a strong inference that a defendant acted with "the required state of mind." 15 U.S.C. § 78u–4(b)(2). In this Circuit this scienter re-

quirement is satisfied by showing that the defendants had "an intent to deceive, manipulate or defraud" or that the defendant "acted with a severely reckless state of mind." *Bryant*, 187 F.3d at 1282–83. Severe recklessness is "'limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers and sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.'" *Id.* at 1282 n. 18 (quoting *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir.1989)). "Scienter must be found with respect to each defendant and with respect to each alleged violation of the statute." *Phillips v. Scientific–Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir.2004).

Defendants argue Plaintiffs' scienter allegations are "woefully lacking" and cannot support the strong inference necessary to avoid dismissal. Plaintiffs respond that the Complaint alleges scienter with particularity based on the totality of the allegations in the Complaint. Plaintiffs argue that the Complaint contains detailed statements of five former high level employees of Applica which allege that the problems with Home Café and Tide Buzz were known at the Company and that the individual Defendants either knew or recklessly disregarded them. Additionally, Plaintiffs argue that the allegations of Applica's GAAP violations support a strong inference of scienter. Looking to the specific allegations as to each Defendant and each alleged violation, the Court finds that the Complaint has adequately pleaded scienter as to certain Defendants and allegations but not others.

#### a) GAAP violations

Plaintiffs contend that Defendants' alleged violations of GAAP, including allega-

tions of improper revenue recognition and failure to timely write down obsolete inventory, support an inference of scienter in this case.[2] Defendants argue that these alleged violations are mere "fraud by hindsight" and that even if Applica's actions constituted accounting errors, such violations alone are insufficient to establish scienter. Defendants are correct that without additional evidence, failure to follow GAAP is insufficient to establish scienter for securities fraud. *In re Sportsline.com Sec. Litig.,* 366 F.Supp.2d 1159, 1165 (S.D.Fla.2004); *see also Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1208 (11th Cir.2001); *In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 553 (6th Cir.1999). Such allegations may establish negligence but do not create a strong inference of recklessness because "[t]hey merely suggest that either management or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1269 (11th Cir.2006) (quoting *Reiger v. Price Waterhouse Coopers LLP,* 117 F.Supp.2d 1003, 1009 (S.D.Cal.2000)).

Courts have identified several factors or "red flags" that often provide the necessary additional support for a finding of scienter based on GAAP violations, including allegations of insider trading, the magnitude of the improperly recognized revenue, whether the violations related to major balance sheet items based on contracts of great financial importance, and whether the GAAP violation violates the corporation's internal policies. *In re Sportsline.com Sec. Litig.,* 366 F.Supp.2d

at 1166. Applying these factors to Plaintiffs' Complaint, the allegations are sufficient to establish scienter as to the allegations of improper revenue recognition but not failure to timely write down inventory, for the reasons set forth below.

i. Improper revenue recognition

■ With regard to Plaintiff's allegations of scienter based on GAAP violations for improperly recognizing revenue, the Court finds that there is additional evidence to conclude that this violation contributes to support a strong inference of scienter. Here, assuming the factual allegations to be true, recognition of the Home Café sales revenue despite higher than normal returns violates the company's internal policy for revenue recognition, which states that revenue will be recognized only after "all contractual obligations have been satisfied and collection of the resulting receivable is reasonably assured." Compl. ¶ 45. Additionally, Applica stated to investors that Home Café figured prominently in the company's prospects and expected growth. *Id.* ¶ 24.

Moreover, Plaintiffs have alleged that Defendant Schulman was directly confronted by well-positioned Applica employees about problems with the Home Café which contributed to an inability to reasonably estimate product returns. *Id.* ¶ 38, 39, 40, 47. Despite this knowledge, Schulman nevertheless issued financial statements based on this improper revenue recognition. These factors suggest that Applica was reckless in recognizing revenue in a manner that violated GAAP and its own publicly-stated policy for a product that related a product of great

---

2. GAAP "comprise a set of basis postulates and broad accounting principles pertaining to business enterprises. These principles ... establish guidelines for measuring, recording and classifying the transactions of a business entity." *In re Sportsline.com Sec. Litig.,* 366 F.Supp.2d at 1165 (quoting *Reiger v. Price*

*Waterhouse Coopers LLP,* 117 F.Supp.2d 1003, 1009 (S.D.Cal.2000)). SEC regulations provide that financial statements not prepared in accordance with GAAP will be presumed to be misleading or inaccurate. *Id.* (citing 17 C.F.R. § 210.4–01(a)(1)).

financial importance to the company. *See In re Sportsline.com Sec. Litig.*, 366 F.Supp.2d at 1166.

Defendants argue that the alleged revenue recognition violations are immaterial. Issues of materiality are typically decided by the trier of fact, however, and may only be decided as a matter of law when it is so plain that reasonable minds could not differ. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir.2002). At this time, the Court cannot conclude that reasonable minds could not differ as to the materiality issue with regard to GAAP violations regarding improper revenue recognition. Thus at this stage, the Court concludes that Schulman's knowledge of the Home Café product defects coupled with the important role sales of Home Café played in financial projections and the violation of the company's internal policy supports an inference of scienter as to this alleged GAAP violation.[3]

> ### ii. Failure to timely write-down inventory

▮ The Court does not find that Plaintiffs have demonstrated that Defendants' failure to write down obsolete inventory supports a strong inference of fraudulent intent or severe recklessness, however. Plaintiffs allege that Defendants violated GAAP and their own accounting policy by not writing down the inventory of Tide Buzz despite knowledge that demand for the product would not meet original forecasts. *Id.* ¶¶ 63–67. Defendants respond that knowledge of slow sales early in the release of Tide Buzz does not equate to knowledge that Applica should have known that sales would not increase, particularly in light of the typical spike in sales of products like Tide Buzz during the holiday season. Moreover, as the Complaint acknowledges, Defendants disclosed to investors that sales were slow, that Defendants repositioned the price point for Tide Buzz, and that additional advertising efforts were launched during the holiday to increase sales. *See* Compl. ¶¶ 79, 82. As Applica's own policy states, "valuation [of obsolete inventory] requires significant judgment from management as to the saleability of its inventory based on forecasted sales." *Id.* ¶ 63.

Considering the totality of the circumstances, Plaintiffs have not demonstrated that the failure to write down Tide Buzz inventory mere months prior to the actual write-down of that inventory was anything more than, at most, a claim of negligence or corporate mismanagement. Therefore, the Court cannot conclude that the allegations regarding the failure to write down inventory support a strong inference of fraudulent intent. *See In re Sportsline.com Sec. Litig.*, 366 F.Supp.2d at 1164 ("[I]f the facts alleged do not exclude other plausible explanations that would under a plaintiff's circumstantial inference of scienter, than that plaintiff's facts cannot be fairly said to raise a 'strong inference' that defendant acted with the required state of mind.")

> ### b) Defendants Schulman and Applica Incorporated

▮ As noted above, Plaintiffs have pleaded several instances where Schulman was directly confronted by well-positioned Applica employees about problems with the Home Café. Compl. ¶ 38, 39, 40, 47;

---

**3.** Courts have held that "[w]here accounting irregularities are sufficiently critical to the core operations of the company, knowledge of the accounting improprieties may be imputed to the company's officers and directors who are involved in day-to-day operation of the company." *In re Winstar*, 2006 WL 473885, *7 (S.D.N.Y. Feb.27, 2006) (citing *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F.Supp.2d 474, 497 (S.D.N.Y.2004)). Thus, as CEO of Applica during the Class Period, Schulman's knowledge or reckless disregard of the GAAP violations may be imputed to the corporation.

*see In re Sunbeam Sec. Lit.,* 89 F.Supp.2d 1326, 1338 (S.D.Fla.1999). Schulman knew of the products defects and slow sales but failed to disclose this information when commenting on Applica's new products and expected growth, creating an overly optimistic view of their success. Moreover, courts have uniformly held that the acts of a corporate officer that are intended to benefit a corporation to the detriment of outsiders are properly imputed to the corporation. *In re Sunbeam Sec. Litig.,* 89 F.Supp.2d 1326, 1340 (S.D.Fla.1999) (citing *Seidman & Seidman v. Gee,* 625 So.2d 1, 2 (Fla.App.1992)). The knowledge of individuals who exercise substantial control over a corporation's affairs is properly imputable to the corporation. *Id.; see Am. Standard Credit, Inc. v. Nat'l Cement Co.,* 643 F.2d 248, 270–71 & n. 16 (5th Cir. 1981). Therefore, the scienter of Defendant Schulman, as CEO of Applica, may properly be imputed to Applica itself.

Schulman's failure to disclose the known product defects when making positive statements about Home Café sales, coupled with the accompanying GAAP violations, amounts to an extreme departure from the standards of ordinary care and present a danger of misleading investors that is so obvious that Applica should have been aware of it. Thus, the Complaint sufficiently pleads scienter as to Defendants Schulman and Applica.

*c) Defendant Michienzi and Polistina*

 Plaintiffs have not, however, sufficiently alleged scienter, however, as to Defendants Michienzi and Polistina or the statements made during the November 4, 2004 and March 14, 2006 earnings confer-

ence calls. In contrast to the scienter allegations regarding Defendant Schulman, Plaintiffs have not alleged with particularity that Defendant Michienzi and Defendant Polistina were directly informed of product defects such that they knew or should have known that their statements were deceptive or likely to mislead investors at the time they were made.[4] Plaintiffs' conclusory allegations that these Defendants knew or recklessly disregarded the falsity of their statements or omissions based on their positions in the corporation is insufficient to meet the heightened pleading requirement for scienter. *In re Sunbeam Sec. Litig.,* 89 F.Supp.2d 1326, 1341 (S.D.Fla.1999); *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1265 (11th Cir.2006) ("It is well established that 'claims of securities fraud cannot rest on speculation and conclusory allegations.'") (quoting *Hoffman v. Comshare, Inc. (In re Comshare Inc. Sec. Litig.),* 183 F.3d 542, 553 (6th Cir.1999)); *see also In re Aspeon, Inc. Sec. Litig.,* 168 Fed.Appx. 836, 838–839 (9th Cir.2006) ("Generic allegations showing at most that Defendants engaged in a 'hands on' management style within the company will not give rise to a strong inference of conscious or deliberate recklessness without particularized allegations indicating involvement in or knowledge of the fraud.").

Moreover, the allegedly misleading statements issued by Michienzi and Polistina in the November 4, 2004 conference call were accompanied by disclosures of the slow sales and pricing issues with regard to Tide Buzz and "speed bumps" in the launch of the Home Café. *See* Defs.' Mot.,

---

4. Plaintiffs make several allegations that confidential witnesses knew that problems with the Home Café were discussed at various meetings, Compl. ¶ 36, that "management" knew of warranty issues, *Id.* ¶ 42, and that rollout of Home Café was "very much driven by Michienzi and Schulman," *Id.* ¶ 39. These vague allegations are not stated with sufficient particularity to support a "strong" inference that these Defendants were reckless in their statements, where there are no clear allegations that Michienzi and Polistina were ever told of product defects or knew such defects could not be overcome

Ex. C and F. Absent some specific allegation that these Defendants had actual knowledge of the substantive allegations in the Complaint, the Court cannot conclude that Plaintiffs have adequately alleged that Defendants Michienzi and Polistina were severely reckless in not knowing that their statements would be misleading to investors. Accordingly, Plaintiff's claims must be dismissed as to Defendants Michienzi and Polistina.

### 2. Safe Harbor Provisions for Forward–Looking Statements

Defendants also contend that the Complaint should be dismissed because Defendants' statements are shielded from liability as "forward-looking statements." The PSLRA provides a two-pronged safe harbor provision for "forward looking" statements and projections.[5] The purpose of this safe-harbor is to "loosen the 'muzzling effect' of potential liability for forward-looking statements, which often kept investors in the dark about what management foresaw for the company." *Harris*, 182 F.3d at 806. The provisions of the PSLRA protect not only explicitly forward looking statements, but also "any statement of the assumptions underlying or relating to ... a statement of the plans and objectives of management for future operations." 15 U.S.C. § 78u–5(i)(1)(D). The Eleventh Circuit has held that a present tense statement can be "forward looking" in the statutory sense. *Harris*, 182 F.3d 799 at 806. In evaluating the application of the PSLRA safe harbor for forward-looking statements the Eleventh Circuit has held that courts must conduct a "piecemeal examination of the statements found in a company communication." *Harris*, 182 F.3d at 804. The Court will therefore examine each statement made by the Defendants to see if it fits within either prong of the safe harbor.

Under the first prong, "forward looking statements," are protected if accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C § 78u–5(c)(1)(A)(i). The cautionary language need not explicitly refer to the particular risk that ultimately came to pass, but instead must merely identify "important factors that could cause actual results to differ materially from those predicated in the forward-looking statement." 15 U.S.C. § 77z–2(c)(1)(A)(i); *see also Ehlert v. Singer*, 245 F.3d 1313, 1320 (11th Cir.2001).

Under the second prong, even if the forward-looking statements have no meaningful cautionary language, the Plaintiffs must nonetheless prove that the Defendants made the statements with "actual

---

**5.** Forward-looking statements include:

(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursu-

ant to the rules and regulations of the Commission;

(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

15 U.S.C. § 78u–5(i)(1).

knowledge" that they were "false or misleading." 15 U.S.C. § 78u–5(c)(1)(B); *Harris;* 182 F.3d at 803. However, the safe harbor of the PSLRA only applies to forward-looking statements and not misstatements or omissions of historical or contemporaneous facts. *Marrari,* 395 F.Supp.2d at 1188 (citing *Miller v. Champion Enter., Inc.,* 346 F.3d 660, 677–78 (6th Cir.2003)).

Addressing each of the statements alleged to be false or misleading individually, the Court finds that several of the statements are forward-looking and are accompanied by meaningful cautionary language. Plaintiffs argue that none of the alleged misleading omissions and misrepresentations are forward-looking statements covered by the safe-harbor because material omissions are not protected. The Eleventh Circuit has held, however, that a material and misleading omission can fall within the safe harbor. *Harris,* 182 F.3d at 806. Additionally, contrary to Plaintiff's contention, the cautionary statements accompanying Applica's statements are not mere boilerplate. The warnings included in the press releases, the introduction to both conference calls, and in the Form 10–Q and 10–K are detailed and informative, telling the reader what particular risks the company faces company and what the effect of those risks could be. *See id.* at 807. The Court will address each of the statements alleged to be a misleading omission or misrepresentation individually.

a) November 4, 2004 Press Release

■ The November 4, 2004 press release contains both protected statements and historical facts which are not protected by the safe harbor. The statement that Applica had experienced an increase in sales for the quarter of "8.2% from the same period the prior year" is a statement of historical or contemporaneous fact and is not protected by the safe harbor. *See Miller v. Champion Enter., Inc.,* 346 F.3d 660, 677–78 (6th Cir.2003).[6] However, the remaining statements regarding the effect of changes the company has under gone and the intended impact in creating long-term shareholder value falls within the safe harbor. These are forward-looking statements about future projections and are accompanied by a meaningful cautionary statement in the release that set forth the risks that might affect such future projections.

b) November 4, 2004 Conference Call[7]

■ Defendants' statements regarding positive sales of Home Café and successful research and testing of Tide Buzz are

---

**6.** Although Defendant argues that Plaintiff has failed to adequately plead with particularity that these statements are false, the Complaint contains the requisite "who, what, when and why" sufficient to meet the requirements of Rule 9(b). *In re Sunbeam Sec. Lit.,* 89 F.Supp.2d 1326, 1338. Defendants contention that the statements are literally true statements is unavailing where Plaintiffs claims are based on Defendants' failure to disclose additional material information when making those true statements. *McMahan & Co. v. Wherehouse Entm't, Inc.,* 900 F.2d 576, 579 (2d Cir.1990) ("[T]he disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers."). At this stage the Court must take the facts alleged to be true and therefore concludes that Plaintiff has plead the falsity of the statements with adequate particularity.

**7.** As to the alleged misleading statements in the November 4, 2004 and March 14, 2005 earnings conference calls, the Court has already concluded that the Complaint does not adequately plead that these statements were not made with requisite state of mind and thus they cannot support Plaintiffs' claim for securities fraud. However, because dismissal of these statements is coupled with leave to amend, the Court will nevertheless address whether they are also forward-looking statements.

statements of present facts and not protected under the safe harbor. The statement that sales would "still remain at about $40 million for the year" is a forward-looking statement, however, that was accompanied by meaningful cautionary language regarding risks and uncertainties, in particular the acceptance of products by customers and consumers.

#### c) Form 10–Q

■ On November 8, 2004, Applica filed its quarterly report with the SEC on Form 10–Q. Though some of the statements contained therein are statements or omissions of historical fact, the statement that Applica "expects sales of Black & Decker branded products to continue to increase for the remainder of the 2004 as the result of sales of several new products, including the Home Café ... and the Tide Buzz," is a forward-looking statement protected by the safe harbor.

#### d) March 14, 2005 Press Release and Conference Call

■ Similarly, Applica's statement that "[w]e are pleased by our strong performance in the fourth quarter ... We expect that our efforts will position us to be profitable in 2005" and its projections for the first quarter of 2005 are forward-looking statement containing projections of revenues, income or earnings per share, which are covered under 15 U.S.C. § 78u–5(i)(1)(A). The statements were both accompanied by meaningful cautionary language and are therefore covered by the safe harbor for forward-looking statements.

#### e) March 11, 2005 Form 10–K

On March 11, 2005, Applica filed its Form 10–K for the year end of 2004 with the SEC. In these financial statements, Applica disclosed its policy of accounting for revenue recognition and for writing down the value of slow-moving and obso-lete inventories. These statements do not fall within the protections of the safe harbor. Plaintiffs do not identify any additional specific statements in the Form 10–K as fraudulent and the Court, viewing the form as whole, cannot conclude at this stage, that it constitutes a forward-looking statement subject to the safe harbor.

#### C. Section 20(a) Count

■ Under Section 20(a) of the Exchange Act, to state a claim for controlling person liability against a defendant, it must be alleged that the defendant had (1) the power to control the general affairs of the entity primarily liable for the Section 10(b) or Rule 10b–5 violation at the time of the violation, and (2) the power to control or influence the specific policy that resulted in the primary violation under Section 10(b) or Rule 10b–5. *In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1367 (S.D.Fla.2001) (citing *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996)). Here, the Defendants argue that Plaintiffs have failed to plead a primary violation under Section 10(b) or Rule 10b–5 of the Exchange Act, and therefore the Section 20(a) controlling persons claim must also be dismissed. *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir.2001). As discussed above, the Court has found that certain allegations in the Complaint lack the requisite scienter and therefore must be dismissed. Accordingly, to the extent that the Section 20(a) Count rests upon violations of Section 10(b) or Rule 10b–5 that have been dismissed, i.e. the alleged misstatements by Defendants Michienzi and Schulman, the violations of GAAP for failure to timely write down inventory, and any forward-looking statements, the Court must also dismiss the Section 20(a) Count. However, to the extent that the Section 20(a) Count rests upon the alleged violations of Section 10(b) or Rule 10b–5 that have not been dis-

missed, the Complaint sufficiently pleads a Section 20(a) claim.

## III. CONCLUSION

The Court concludes that the Complaint in this case should be dismissed, based upon the foregoing reasons, in particular the failure to plead with particularity specific facts that the Defendants Michienzi and Polistina acted in a severely reckless fashion in making the statements to investors or that the failure to timely write down Tide Buzz inventory supports a finding of scienter. The Court, however, will give Plaintiffs leave to amend.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint [DE–22] is hereby **GRANTED, in part.**

2. The Court hereby **DISMISSES** those portions of the Complaint that relate to the statements made by Defendants Michienzi and Polistina or that relate to the failure to timely write down Tide Buzz inventory, and those statements identified as forward-looking under the Exchange Act safe harbor.

3. Plaintiffs are hereby granted leave to file an Amended Complaint by February 1, 2006. Failure to timely file an Amended Complaint will result in a dismissal with prejudice of the portion of the Complaint relating to the dismissed allegations.

## *ORDER DISMISSING WITH PREJUDICE PORTIONS OF COMPLAINT*

THIS CAUSE is before the Court *sua sponte.*

On January 17, 2007, this Court entered an Order granting in part Defendants' Motion to Dismiss and dismissing those portions of the Complaint that related to the statements made by Defendants Michienzi and Polistina or that relate to the failure to timely write down Tide Buzz inventory, and those statements identified as forward-looking under the Exchange Act safe harbor. [DE–28]. The Court granted Plaintiffs leave to file an Amended Complaint by February 1, 2006, noting that failure to timely file an amended complaint would result in a dismissal with prejudice of the portion of the Complaint relating to the dismissed allegations. On February 6, 2007, the Court extended the deadline for filing an amended Complaint until February 15, 2007. [DE–30]. As of the date of this Order, an amended Complaint has not been filed.

Accordingly, it is **ORDERED AND ADJUDGED** that those portions of the Complaint dismissed by the Court's January 17, 2007 Order are hereby **DISMISSED WITH PREJUDICE.** The deadline for amendment having passed, Defendants' Answer to the Consolidated Class Action Complaint is due on or before March 7, 2007.